Bowers, Plaintiff in error, vs. The State, Defendant in error.

*April 21—May 10, 1904.*

*Criminal law: Murder: Information: Expert testimony: Qualification: Immaterial error.*

1. An information charging the murder of George Bowers, Sr., sufficiently charges the murder of a "person" or a "human being," without the use of those words.

2. A physician whose general qualifications to testify as such were
   shown, and who was shown to have had seventeen years prac-
   tice and to have treated numerous bruises and wounds on the
   head, was qualified, *prima facie* at least, to testify as an expert
   concerning fractures of the skull.
3. The exclusion, upon defendant's own objection, of competent evi-
   dence as to a part of the *res gestæ*, cannot be held error prejudi-
   cial to him.

ERROR to review a judgment of the circuit court for Wau-
kesha county: JAMES J. DICK, Circuit Judge.. *Affirmed.*

*D. J. Hemlock,* for the plaintiff in error.

For the defendant in error there was a brief by the *Attor-
ney General* and *W. D. Corrigan,* second assistant attorney
general, and oral argument by *Mr. Corrigan.*

WINSLOW, J. The plaintiff in error was convicted of mur-
der in the first degree, and brings his writ of error to reverse
the judgment entered upon the verdict. The evidence showed
without dispute that on the 2d day of November, 1902, the
plaintiff in error (an adult) came to his father's house and,
after some trouble with his mother, struck his father over the
head twice with a chair, fracturing his skull and causing his
death a few hours later.. There was some testimony tending
to show that the plaintiff in error was somewhat intoxicated
at the time. There was no claim of self-defense, the deceased
being feeble and nearly seventy years of age; nor was there
any claim of insanity. Indeed, it is very difficult for us to
see upon what theory it could ever have been expected that
a conviction of any crime of a less degree than deliberate mur-
der could be rendered. There are three claims of error,
which will be briefly considered.

The information charges that the plaintiff in error "did
wilfully and feloniously, and of his malice aforethought, and
with the premeditated design to effect the death of George
Bowers, Sr., kill and murder the said George Bowers, Sr."
It is said that this charge is insufficient, because it does not

allege that the plaintiff in error murdered a "person" or a "human being," and that under the statute (secs. 4337, 4338, Stats. 1898) the information must use either the word "person" or the words "human being." The ingenuity of the point is only exceeded by its absurdity. An allegation of the murder of George Bowers, Sr., is an allegation of the murder of a person under all reasonable rules of the construction of language. When a name of the same character as the names usually applied to human beings is used in a legal document, it is not necessary to state that the physical entity corresponding to that name is a human being. The courts will presume such to be the case.

Dr. Malone was a witness on behalf of the state, whose general qualifications to testify as a physician were fully shown. He attended the deceased after the injury, and assisted two other physicians at the autopsy. He testified that he had had experience in treating wounds and bruises on the head, and that the skull of the deceased was fractured. He was asked what, in his opinion, might have produced the fracture found, and answered, against objection, that it might have been produced by a blunt instrument. In answer to a further question, to which objection was also made, he stated that he did not think it could have been produced by a blow of the fist. It is now said that this testimony was erroneously admitted, because the doctor had not testified that he had ever seen or treated a "fracture" of the skull before, but only "wounds or bruises" on the head. There are several answers to the objection. One sufficient answer certainly is that when the doctor stated that he had had seventeen years' practice as a physician, and had treated numerous bruises and wounds on the head, he had qualified himself, *prima facie* at least, to speak as an expert concerning fractures of the skull, which is one of the common forms of wounds upon the head. If the plaintiff in error had wished a more specific statement of the doctor's experience, the trial court would doubtless have per-

mitted his counsel to interrogate the doctor fully as to his experience with fractures. Again, the testimony of the other doctors and the admitted facts leave no possible doubt as to the cause of death, so there was no prejudice in any event.

It appeared on the trial that when the plaintiff in error went to his father's house on the day of the murder he first had some difficulty with his mother, his father not being in the room. An eyewitness of the transaction was testifying, and proceeded to say that the plaintiff in error punched his mother and she fell, whereupon the plaintiff in error objected to the statement as an attempt to prove another offense, and the objection was sustained, and the jury directed to pay no attention to the evidence as to the talk with and attack upon the mother. The witness then stated that in two or three minutes the deceased appeared at the door to see what was the matter, and *George* was hitting his mother, and the deceased said, "What does this mean?" and *George* said, "What do you want, old man?" and struck him twice with a chair. After the jury had been considering the case for a time, they came into court, and asked the following question:

"We want to know if we are allowed to take into consideration the trouble which *George* had with his mother on the evening of November 2, 1902, for the purpose of showing the state of the defendant's mind when he struck his father."

To this the court replied:

"I ruled out the evidence as to the transaction, if any, which was attempted to be shown between the defendant and his mother previous to the time when the deceased had appeared on the scene. *What transpired, so far as shown by the evidence, at the time the father appeared on the scene, and what took place there as appears from the evidence, you have a right to consider.* So far as the ruling of the court upon the trial, I am not disposed to change it."

It is difficult to see why the entire difficulty with the mother, which was in progress when the father appeared and which in fact caused the appearance of the father, was not

competent evidence as a part of the *res gestæ;* but, however that may be, the ruling of it out was not prejudicial, because the ruling was made upon the plaintiff in error's own motion. A certain amount of evidence concerning this difficulty did, however, get into the case, and we understand by the ruling above quoted that the jury were distinctly told that they might consider all of the transaction which appeared in the evidence. This is certainly all that the plaintiff in error could ask, he having, by his own objection, prevented the introduction of the entire incident.

*By the Court.*—Judgment affirmed.