KARAKUTZA, Plaintiff in error, vs. THE STATE, Defendant in error.

*February 5—May 23, 1916.*

*Criminal law: Homicide: Circumstantial evidence: Sufficiency: Competency: Accessory before the fact: Trial: Statute construed: "Substantive felony:" Instructions to jury: Waiver of objections.*

1. Upon a trial for murder the evidence, though wholly circumstantial, is *held* sufficient to sustain a conviction.
2. The admission in evidence in such case of Turkish gold pieces of the same denomination as certain gold pieces shown to have been in the possession of the murdered man, and of a pistol of the same caliber as that with which he was shot,—all of which were found in defendant's room on the day following the murder,—was proper.
3. Under our statute (secs. 4613–4615, Stats. 1915) an accessory before the fact must still be prosecuted as such; but it is not essential to his conviction that the principal felon be prosecuted or convicted, it being sufficient that the guilt of the principal felon be proved. The words "substantive felony" in sec. 4614

do not mean the principal felony, but merely a felony not dependent on the conviction of another person for another crime.

4. At the trial upon an information charging murder only it was error to instruct the jury upon the subject of an accessory; but no objection having been made at the time on behalf of defendant, and the court, in connection with its charge on that subject, having given an instruction requested by defendant's counsel which practically covered the same ground, any objection to the charge must be deemed to have been waived and the conviction is affirmed. If, however, there were grave doubt as to defendant's guilt there might be a reversal notwithstanding such waiver.

ERROR to review a judgment of the municipal court of Milwaukee county: A. C. BACKUS, Judge.   *Affirmed.*

The information in this case contained one count charging murder in the first degree, the verdict was guilty, and the plaintiff in error (hereinafter called the defendant) was sentenced to life imprisonment, and brings his writ of error to reverse the judgment.   The evidence was purely circumstantial.   Horan Jarakain, an Armenian doctor living in Milwaukee, was murdered during the night of March 16, 1914, and his body was found pierced with three bullet wounds at 2:30 p. m. on the following day in a narrow field between the electric railway track and the Chicago & Northwestern Railway track in the town of Lake, Milwaukee county, south of the village of St. Francis and about 600 feet south of an old flag station of the latter railroad.   The defendant is a Greek who then conducted a boarding house at Cudahy.   He was in Milwaukee on the 16th of March aforesaid, and was in the company of one Julius Otto, a relative by marriage. In the evening of that day defendant and Otto called on the deceased at his boarding house and stayed until about 11:30 o'clock, when the three went out and boarded an electric interurban car bound for South Milwaukee.   The conductor of the car testified that the defendant got off the car at about 11:50 o'clock at a crossing about 500 feet north of the flag station and that the other two got off at the flag station, about

three quarters of a mile from the Cudahy depot. The defendant contended that he got off the car at the Cudahy station and went immediately home. Defendant was arrested on the following day and was found to have in his room a number of Turkish gold pieces of the same denomination as certain gold pieces shown to have been in the possession of Jarakain, also a pistol. There was evidence tending to show that the pistol was of the same caliber as that with which the deceased was shot. Apparently Otto disappeared and was never arrested. The defendant after his arrest told four different stories, in the first of which he denied that he even knew Jarakain. The case was originally submitted to the jury on the issue whether or not the defendant was guilty of the crime of murder, nothing being said about any possible conviction as an accessory. The jury after being out several hours were brought into court at their own request and asked for instructions on accessory, whereupon the following proceedings were had:

Court: "An accessory before the fact is one who procures, commands, or counsels the commission of a felony by another, but who is not present either actually or constructively when the felony is committed. To constitute one an accessory before the fact there must be a principal guilty of the felony and there must be some participation in the offense by the accessory by way of procurement, command, or counsel."

A Juror: "I do not understand that last word there, 'counsel.' Does that mean conversation to that effect?"

By the Court: "One who counsels with another."

Juror: "That means talking about it, consulting?"

Court: "I will give you the definition of the word 'counsel.' Counsel is defined as 'an interchange of opinions, mutual advising.'"

Juror: "What form of verdict are we to bring in if we find this man is an accessory?"

Court: "I will read you the statute. 'Every person who shall be aiding in the commission of any offense which shall be a felony or who shall be accessory thereto before the fact by counseling, hiring or otherwise procuring such felony to be

committed, shall be punished in the same manner as is, or shall be, prescribed by law for the punishment of the principal felon.' Counsel for the defendant has requested the court, in addition to the definition of accessory, to state to the jury 'that before you can find the defendant guilty of being an accessory, you must be convinced beyond a reasonable doubt that the defendant commanded, counseled, or procured the commission of the felony by another.' Does that cover your request, Judge Neelen?"

Mr. Neelen: "Yes, that covers it."

By the Court: "Gentlemen of the jury: Mere knowledge that an offense is to be committed or mere mental approval is not sufficient."

Exception was taken after verdict to the whole of the foregoing instructions on the subject of accessory.

For the plaintiff in error there was a brief by *N. B. Neelen* and *E. T. Fairchild,* and a reply brief and oral argument by *Mr. Fairchild.*

For the defendant in error the cause was submitted on a brief by the *Attorney General* and *Winfred C. Zabel,* district attorney, and a supplemental brief by the *Attorney General* and *J. E. Messerschmidt,* assistant attorney general.

The following opinion was filed March 14, 1916:

WINSLOW, C. J. The contention that the verdict is not sustained by the evidence must be overruled. While the proof of guilt was entirely circumstantial it was none the less persuasive and we see no reason to suppose that there has been any miscarriage of justice. The introduction in evidence of the Turkish money and the pistol found in the defendant's possession was entirely proper. Their probative value was a question for the jury to consider. The serious question in the case arises upon the supplemental charge to the jury. Evidently some of the jury at least were considering the question whether the defendant might not be convicted if he had been an accessory and hence came the application to the court for instruction on the subject. If, under an informa-

tion charging murder alone, a person may be found guilty simply on proof that he was an accessory, these instructions were properly given, otherwise not. This raises a question which is not without difficulty. At common law the principal and accessory were guilty of separate and distinct crimes, and no person could be convicted of one on evidence showing him to be guilty of the other. 1 Wharton, Crim. Law (11th ed.) §§ 239, 278; *State v. Buzzell,* 58 N. H. 257; *Pettes v. Comm.* 126 Mass. 242; *State v. Wyckoff,* 31 N. J. Law, 65; *Walrath v. State,* 8 Neb. 80.

While the accessory was guilty of a distinct crime it was nevertheless a dependent crime, *i. e.* the conviction of the person guilty of the principal crime must precede or accompany the conviction of the accessory. 1 Wharton, Crim. Law (11th ed.) § 277. This requirement necessarily produced more or less frequent failures in the administration of justice. If the man who actually performed the murder escaped, the accessory could not be convicted; hence the enactment of statutes to remedy the difficulty. In a general way it may be said that there are two classes of these statutes. The most numerous class abolishes in terms all distinction between the two crimes and declares that an accessory may be convicted and punished as a principal. Wharton, Homicide (3d ed.) § 66. Under such a statute the instructions given here would of course be entirely correct. The other class of statutes is modeled after the English statute referred to in *Ogden v. State,* 12 Wis. 532. Wisconsin is in the latter class. The sections covering the subject now appear as secs. 4613, 4614, and 4615, Stats. 1915, and they have been upon the statute book without material change since 1839 (Terr. Stats. 1839, pp. 381, 382).

It is correctly said in the *Ogden Case* that our statute is borrowed from the English statute and the gist of it as it then existed is stated thus:

"It enacts that every person who shall counsel, hire, or otherwise procure, any offense to be committed, which shall

be a felony, may be indicted and convicted as an accessory be-
fore the fact, either with the principal felon, or after the con-
viction of the principal felon, or he may be indicted and con-
victed of a substantive felony, whether the principal felon
shall or shall not have been convicted, or shall or shall not be
amenable to justice, and in the last mentioned case may be
punished in the same manner as if convicted of being an ac-
cessory before the fact." [R. S. 1858, ch. 172, sec. 2; Stats.
1915, sec. 4614.]

The slight changes made since that decision do not in any
way affect the question raised here.

It is argued that the words "substantive felony" in this
statute mean the principal felony, and hence that an acces-
sory may and should be indicted as a principal. We are well
convinced that this contention cannot be sustained. Had the
legislature meant that the accessory was to be held to be a
principal and prosecuted as such, it would have been very
easy to say so in half the words. It is clear to our minds
that the intention of the statute was to make the punishment
the same as the principal's and to abolish the old rule that the
principal must first be convicted in order to make possible
the conviction of an accessory; and that the words "substan-
tive felony" simply mean a felony not dependent on the con-
viction of another person for another crime. Such was cer-
tainly the construction given to the statute in the *Ogden Case,*
where it is said in the opinion that Ogden was indicted "as
for a substantive felony, being charged as an accessory before
the fact to the crime of arson." Evidently no suspicion
lurked in the mind of Chief Justice Dixon when he wrote
that opinion that the words "substantive felony" meant the
principal crime. See, also, *Tarasinski v. State,* 146 Wis.
508, 131 N. W. 889. Similar statutes in other states have
received the construction given to our statute in the *Ogden
Case. State v. Ricker,* 29 Me. 84; *Pettes v. Comm.* 126
Mass. 242; *Williams v. State,* 41 Ark. 173.

The result is that under our statute an accessory before the
fact is still to be prosecuted as such, but it is not essential to

his conviction that the perpetrator of the principal crime be prosecuted or convicted; it being sufficient to prove the guilt of the principal felon. The instructions excepted to were therefore erroneous and misleading. But we are met here with the question whether this is an error of which the defendant can now take advantage. The defendant's counsel was present when the supplemental charge was given. It appears by the record that, after the trial judge had defined the word "accessory" and read the section of the statute relating to the punishment, defendant's counsel requested the court, "in addition to the definition of accessory, to state to the jury that before you can find the defendant guilty of being an accessory you must be convinced beyond a reasonable doubt that the defendant commanded, counseled, or procured the commission of the felony by another," and that the court gave the instruction so requested.

No objection was suggested at the time to the giving of the general instructions as to an accessory, but the court was asked to add the proviso just stated. This proviso means, "you can find the defendant guilty if you find beyond a reasonable doubt that he commanded, counseled, or procured the murder," or it means nothing. It really covers the whole charge on the subject of accessory, and the question is whether any objection to that charge was not thereby waived.

There can be no doubt that in a civil case error cannot be assigned upon an instruction given at the appellant's own request. While the courts have been somewhat slow in applying the doctrines of estoppel and waiver to criminal actions, there is no question now as to their applicability even in capital cases. *Emery v. State,* 101 Wis. 627, 78 N. W. 145; *Hack v. State,* 141 Wis. 346, 124 N. W. 492; *Oborn v. State,* 143 Wis. 249, 126 N. W. 737.

A defendant in a criminal case cannot allege error in the admission of unsworn testimony if he consented to the omission of the oath (*Robinson v. State,* 143 Wis. 205, 207, 126 N. W. 750); nor can he claim error in the exclusion of evi-

dence if the ruling was made on his own objection (*Bowers v. State,* 122 Wis. 163, 99 N. W. 447). It is to be noted that the last-named case was a capital case. Logically he ought not to be allowed to claim error in the giving of an instruction which he requested. If this were a case where it seemed that there was grave doubt as to the defendant's guilt, we might perhaps reverse the judgment notwithstanding the fact that the instruction was in substance requested. It is not such a case, however, and hence we feel compelled to affirm.

*By the Court.*—Judgment affirmed.

A motion for a rehearing was denied, without costs, on May 23, 1916.