[Civ. No. 10523. First Appellate District, Division Two.—December 28, 1937.]

JOSEPHINE TRIGUEIRO et al., Respondents, v. STANLEY SKOW et al., Appellants.

James F. Hoey and Hoey, Hamilton & Turner for Appellants.

Carlson & Collins, Jesse E. Nichols and Leo G. Marcollo for Respondents.

GOODELL, J., *pro tem.*—The respondent Francis Trigueiro sued, through his guardian *ad litem*, for injuries inflicted by a motor truck driven by the appellant Stanley Skow and owned by the other appellants. Josephine Trigueiro, his mother, sought special damages for surgical, nurs-

ing and hospital expenses incurred for her son's care. A verdict of $5,000 for the son was reduced to $3,000 on motion for new trial. The mother's verdict was for $898.31.

Francis, a boy of five, was injured while playing with Ernest Caswell, then aged four, outside the Caswell home in El Cerrito. Ernest corroborated Francis' testimony as to the occurrence and was the only other eye-witness. Ernest, however, was not sworn and that omission presents the first point on this appeal.

The appellants contend that a witness can be heard only upon oath or affirmation. (Code Civ. Proc., sec. 1846.) The respondents, of course, do not question this general rule, but they claim that objection was waived. When Ernest was called to the stand the judge asked him the preliminary questions usually put to children. When asked if he went to school, he answered that he went to kindergarten at Stege, and named his teacher. He told the court that he was then five, lived with his mother, father, brother and sister at 5748 School Street; also that he attended Sunday school. It should be borne in mind that no objection was made that the boy was incapable of receiving just impressions of the facts, or of relating them truly (Code Civ. Proc., sec. 1880, subd. 2), or that the judge had not examined him thoroughly enough; nor did counsel seek to supplement the judge's inquiry, as might have been done (*People* v. *Delaney,* 52 Cal. App. 765, 773 [199 Pac. 896]), and no point is now made in any of those respects. The judge satisfied himself that the lad had the requisite intelligence, and then questioned him as follows: "Q. And do you know what it means to tell the truth? A. Yes. Q. You know what that means? A. Yes. Q. Do you know what happens to little boys that don't tell the truth? A. Their guardian angel runs away. Q. And you think you always tell the truth, do you, Ernest? A. Yes. Q. Well, I guess we can swear him or I guess he better testify without swearing him. . . . it is a pretty good answer that the guardian angel runs away." Thereupon respondents' counsel inquired, "Will you stipulate he may testify without being sworn? I don't know what the rule is, your Honor," and appellants' counsel replied, "I think it is a matter within the discretion of the court. I think he is pretty young to put under oath," to which respondents' counsel assented. The court then said, "It is in the discretion of the court whether

he be permitted to testify or not," and expressed doubt whether, if allowed to testify, he should be sworn, and continued, "I don't know whether that means as much as his answer that if he doesn't tell the truth that the guardian angel will run away. You want him put under oath?", to which appellants' counsel replied, "Your Honor may ask him." The court's examination continued: "Q. You know what an oath is? Did you ever hear of an oath? A. No. Q. He wouldn't know that. You know what it is to tell the truth because you just told me you know what happens to little boys who don't tell the truth. A. Yes. Q. Now will you tell the truth here and nothing but the truth? A. Yes, sir. Q. If we ask some questions or if these men ask you some questions you will tell us absolutely the truth and nothing else? A. Yes, sir. Q. And if you don't know what they ask you, you will tell us, won't you? A. Yes. Q. I think we will let him testify. Proceed."

Thereupon Ernest was questioned respecting the accident and gave clear, responsive and intelligent answers.

When respondents' counsel asked for a stipulation waiving the oath, his adversary had an opportunity to object. In the face of such objection the judge might have instructed the lad as to the meaning of an oath, and then have had him sworn, or he might have withdrawn him from the stand. But no such objection was forthcoming. Instead, appellants' counsel indicated that it was discretionary, thereby inviting the very action of which appellants now complain. Counsel's remark, "I think he is pretty young to put under oath" was not sufficiently unequivocal to amount to an objection either to nonage or to unsworn testimony. Still further opportunity was given for objection when the judge commented upon the "guardian angel" sanction, which was the lad's own idea. The judge's pointed inquiry, "You want him put under oath?", instead of eliciting an unequivocal "yes", which could have been been treated as objection, or a "no", which would have been an express waiver, brought only the reply, "Your Honor may ask him", which again invited the exercise of the court's discretion. The judge twice thereafter asked the boy if he would tell the truth and nothing but the truth, and twice the boy answered, "Yes, sir." When the judge finally announced that he would permit him to testify

counsel had a fourth opportunity to object, and at the conclusion of his examination, a fifth.

In Annotated Cases, 1912D, 570, 572, under the case of *State* v. *Morrow,* 63 Wash. 297 [115 Pac. 161], the prevailing rule is thus stated: "It is generally held that where a witness testifies without having been sworn, the verdict will be set aside if the error is not discovered until after the verdict. . . . Where, however, a witness is permitted to testify without having been previously sworn, and that fact is known at the time, the defect must be taken advantage of at once, and a failure to do so is such acquiescence in the testimony as will preclude objection after verdict."

In *People* v. *Duffy,* 110 Cal. App. 631, 635 [294 Pac. 496], a robbery case, this rule was followed, where the court, after quoting the above, cites the following additional authorities as being in point: *Rhodes* v. *State,* 122 Ga. 568 [50 S. E. 361] ; *State* v. *Melancon,* 163 La. 435 [112 So. 37] ; *Karakutza* v. *State,* 163 Wis. 293 [156 N. W. 965] ; *Moore* v. *State,* 96 Tenn. 209 [33 S. W. 1046] ; *Barnes* v. *State,* 61 Tex. Crim. 37 [133 S. W. 887], all felony cases and three of them homicide cases.

Appellants do not attempt to distinguish these cases or to show that the rule does not apply, nor do they cite any civil case where such a waiver has not been held effectual. They simply say there should be "a more positive waiver than a mere failure to object. . . . Counsel for defendants simply left it to the court to apply the rule; the court did not do so, *and counsel did not object".* (Italics ours.)

We are satisfied that the circumstances of this particular case,—objection being made for the first time on appeal,—clearly call for the application of the rule, and that any error in permitting the unsworn testimony was waived.

*People* v. *Ewing,* 71 Cal. App. 138 [234 Pac. 917], relied upon by appellants, is not in point for there the child had been held incompetent by the trial judge under Code of Civil Procedure, section 1880, subdivision 2; nor is *People* v. *Watrous,* 7 Cal. App. (2d) 7 [45 Pac. (2d) 380], for there the two children were sworn and testified *over objection.* In *People* v. *Portlock,* 118 Cal. App. 566 [5 Pac. (2d) 920], the court held that the departure from the statutory form of oath left *no oath at all.* The report does not show any objection

but an examination of the transcript shows that at the conclusion of the child's examination a motion to strike out was made upon the grounds that she had not been sworn, and that she was not capable of understanding or taking an oath. Moreover, the proceedings on motion for new trial explain the failure of defendant's counsel to make objection at the very outset. It is sufficient to say that there a definite objection was made during the trial, while here there was none.

The appellants' other point is that the verdict was so excessive as to indicate that it was the result of passion or prejudice. In *Hale* v. *San Bernardino etc. Co.*, 156 Cal. 713, 715 [106 Pac. 83], the court said: "The amount of damages in such cases is committed first to the sound discretion of the jury, and next to the discretion of the judge of the trial court, who, in ruling upon the motion for new trial, may consider the evidence anew, determine anew the facts, and set aside the verdict if it is not just." When, in the instant case, the trial judge reduced the verdict from $5,000 to $3,000, he performed a function which the cases hold is peculiarly that of a trial judge. The case of *Morris* v. *Standard Oil Co.*, 188 Cal. 468, 473 [205 Pac. 1073], is apposite, for there the trial judge, believing the verdict to be excessive, nevertheless refused to reduce it on motion for new trial. In reversing the judgment on the single issue of damages the court said: "The question of excessive damages is one that is first addressed to the trial court. Practically, the trial court must bear the whole responsibility in every case. The power of appellate courts over excessive damages exists only when the facts are such as to suggest, at first blush passion, prejudice or corruption on the part of the jury." (Citing cases.) Had not the trial judge acted in this case, a different question would now be presented. The special damages of $898.31 are themselves some evidence of the severity of the boy's injuries. He suffered from a fractured femur and from abdominal injuries as well. He was in the hospital for a month attended by a day and night nurse. His leg was in a cast for two months and when it was removed and he was able to go about with crutches, he had to learn to walk all over again. "Traction" was applied to the leg,—the pull of a heavy weight. In addition to the fractured femur, his abdominal injuries, while not serious,

must be taken into consideration. We cannot say that the judgment is excessive.

The judgment is affirmed.

Spence, Acting P. J., and Sturtevant, J., concurred.