VOGEL, Plaintiff in error, v. STATE, Defendant in error.†

Court of Appeals

*No. 77–771–CR. Argued October 5, 1978.—*
*Decided January 12, 1979.*
(Also reported in 275 N.W.2d 180.)

† Petition to review granted.

542

For the plaintiff in error there were briefs by *Howard B. Eisenberg*, state public defender, and *Steven P. Weiss*, assistant state public defender, and oral argument by *Steven P. Weiss*, assistant state public defender.

For the defendant in error there was a brief by *Bronson C. La Follette*, attorney general and *Betty R. Brown*,

assistant attorney general, and oral argument by *Betty R. Brown,* assistant attorney general.

Before Gartzke, P.J., Bablitch and Dykman, JJ.

GARTZKE, P.J. Defendant was convicted on one count as a party to the crime of armed robbery in violation of secs. 939.05 (2) (b) and 943.32 (2), Stats., and on a second count as a party to the crime of concealing identity while committing a crime in violation of secs. 939.05 (2) (b) and 946.62, Stats.

The issues are:

1. Is an unsworn inconsistent prior statement by a witness in a criminal trial admissible as substantive evidence of the defendant's guilt?

2. Is the use of such a statement as substantive evidence a denial of due process, contrary to the fourteenth amendment to the United States Constitution?

3. Does the use of such a statement as substantive evidence violate the sixth amendment to the United States Constitution, giving an accused the right to confront witnesses against him, where the witness denies recollection that he made the statement?

4. Does reference during the trial to defendant "running with a partner in past burglaries" require a new trial?

5. Is concealment of identity while committing a crime a separate crime to which the defendant may not be party under sec. 939.05, Stats.?

The evidence at the trial showed that William Lindsey and Daniel Vogel (defendant's brother) robbed the Country Store in Beloit, Wisconsin about 11:53 p.m., December 7, 1976. The store is 20 to 50 feet north of the Wisconsin-Illinois state line. A store clerk testified that two men wearing stockings over their heads entered the store. One threatened the clerk with a knife and demanded money and the other held out a paper bag into which the clerk put money. The clerk could not identify

the men. The two men ran from the store, the police were immediately alerted and officers of the South Beloit, Illinois police force pursued the robbers as they ran southerly along a railroad track in Illinois. The paper bag with the money was abandoned during the chase. An officer responding to a report of the burglary saw defendant in a car with its lights off parked at the railroad tracks in South Beloit about two city blocks from the state line. He saw the car start to move, stopped it, identified defendant and let him go. After learning that defendant's brother had been arrested, the officer advised headquarters that defendant should be requestioned.

Sheila Ford testified that about 1:15 a.m., December 8, 1976, defendant came to her apartment in Beloit. He appeared nervous, gave her some clothing and told her to get rid of it. She recognized one item as belonging to defendant's brother. Defendant said his brother had been involved in an armed robbery but said nothing about his own involvement. He told Sheila Ford he had been riding around delivering a puppy. Defendant was arrested at Ford's apartment about 1:35 a.m.

A store clerk in South Beloit, Illinois, testified that about 11:30 p.m., December 7, 1976, he sold defendant a pair of ladies' nylon pantyhose.

The exact time Lindsey was arrested is not of record but he was in the South Beloit police station by 3:00 a.m., December 8, 1976. That morning Lindsey showed the police where he had thrown the paper bag during his chase. Lindsey gave the South Beloit police a signed question and answer statement between 10:15 a.m. and 12:15 p.m., December 8, 1976.

The state called Lindsey as a witness. Lindsey's testimony confirmed that he and Daniel Vogel committed the robbery and that he, Daniel Vogel and defendant had been together earlier that evening but Lindsey in no way suggested that defendant had anything to do with plan-

ning the robbery. Lindsey was specific about times and places up to the time he was arrested.

Lindsey recalled being arrested and taken to the South Beloit police department where five or six officers asked him questions. He admitted he signed a piece of paper at the station and identified his signature on the first and last page of the question and answer statement but claimed no recollection of giving a statement and claimed that he was drunk at the time the statement was taken. The trial court overruled defendant's objection to questions to Lindsey about the statement. Questions and answers from the statement were read to Lindsey in the jury's presence, he denying recollection of having been asked each question and having made each answer.

The substance of the statement was as follows: Lindsey, Daniel and defendant met at defendant's house in Rockford on December 7. Defendant asked Lindsey and Daniel if they wanted "to pull a job." They drank a case of beer and discussed robbing the Country Store. They drove back to South Beloit in defendant's car where defendant dropped Lindsey and Daniel off at the Palermo Inn and told them to rob the store and meet him in South Beloit afterwards. Lindsey and Daniel walked north along the railroad tracks to the store, Lindsey carrying a paper bag defendant had given to him. They did not rob the store at that time because it was too busy. After again meeting Lindsey and Daniel, defendant visited his sister and borrowed money with which defendant bought a pair of nylons. Daniel made a fake call on defendant's instructions to the South Beloit police department as a diversion to prevent them from assisting the Beloit police. Defendant then drove Daniel and Lindsey to a point near the Country Store and arranged to meet them afterwards. Lindsey and Daniel then performed the robbery.

Defendant testified that he, Daniel and Lindsey drank a good deal of beer that evening. Daniel asked defendant

to buy a pair of nylons for Daniel for reasons he did not explain. Defendant bought the nylons. Defendant then spent most of the evening with a woman from whom he received a dog. About midnight he went to a woods near the railroad tracks where he was going to get rid of the dog but didn't have the heart to do so and was about to leave when an officer stopped him. He went to Ford's house where he was arrested. He denied that he gave Lindsey a paper bag, discussed the robbery with Lindsey and Daniel, told Daniel to make a fake call to the police, or told Ford to get rid of clothing. He denied that anybody discussed a robbery in his presence that evening.

Lyle Vogel, the father of defendant and Daniel Vogel, testified that when he learned Daniel Vogel was arrested, he went to the South Beloit police station where he saw the police dragging Lindsey into the station and that Lindsey appeared to be unconscious.

## I

## USE OF PRIOR INCONSISTENT STATEMENT AS SUBSTANTIVE EVIDENCE UNDER SEC. (RULE) 908.01 (4) (a) 1, STATS.

Defendant concedes that Lindsey's prior statement was properly determined to be a prior inconsistent statement, that it was admissible under sec. (rule) 908.01 (4) (a) 1, Stats.,[1] and that Lindsey could be impeached through that statement, pursuant to sec. 972.09, Stats.[2] Defend-

---

[1] Sec. (rule) 908.01 (4) (a) 1, Stats., provides, "A statement is not hearsay if: (a) *Prior statement by witness.* The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is: 1. Inconsistent with his testimony. . ."

[2] Sec. 972.09, Stats., provides, so far as material, "Where testimony of a witness at any preliminary examination, hearing or

ant contends that sec. (rule) 908.01(4)(a)1 provides only that the statement is not inadmissible as hearsay but that nothing in the rule indicates that prior inconsistent statements by a state's witness in a criminal case may be received as substantive evidence of guilt.

*State v. Major,* 274 Wis. 110, 113, 79 N.W.2d 75 (1956), said of the predecessor to sec. 972.09, Stats., sec. 325.35, Stats., 1955,

> "In a criminal action, examination of a hostile witness as an adverse witness allows the prosecutor to examine without being bound by the witness' answers and provides the opportunity to repair the harm done to the state's case by surprise, but the statute shows no intention on the part of the legislature to allow hearsay evidence to be considered as proof of the facts. . . . Impeachment goes only to the credibility of the witness and the negation of his testimony.

*State v. Major* held that the statute did not affect a long-standing rule that previous inconsistent statements of a witness are not substantive evidence.

*Gelhaar v. State,* 41 Wis.2d 230, 163 N.W.2d 609 (1969), modified *State v. Major* by allowing the use of prior inconsistent statements of an opposing party's witness as substantive evidence. *Gelhaar* did not permit such use of statements by a party's own witness, even though that seemed to be a "logical extension" of the new rule. The court said,

> However, we decline the present opportunity to create such a rule because the *legislature* has acted in this area. Sec. 885.35, Stats., as it has been interpreted by this court in *State v. Major, supra,* does not permit the introduction of a hostile witness' statement as substantive

trial in a criminal action is inconsistent with a statement previously made by him, he may be regarded as a hostile witness and examined as an adverse witness, and the party producing him may impeach him by evidence of such prior contradictory statement."

evidence in a criminal case. (41 Wis.2d at 242, footnote 4.) [Emphasis supplied.]

The supreme court promulgated rules of evidence for the State of Wisconsin "under its inherent and implied power and also under the specific rule-making authority prescribed by sec. 251.18." *In the Matter of the Promulgation of Rules of Evidence for the State of Wisconsin,* 59 Wis.2d R1 (1973). The court amended sec. 972.09, Stats., to its present form. See Appendix I, sec. 15, *In the Matter of the Promulgation of Rules of Evidence for the State of Wisconsin,* 59 Wis.2d R1, R3, R6 (1973). By so doing, the court has implicitly ruled that the legislative origin of sec. 972.09, Stats., is no impediment to a judicial rule of evidence.

We construe sec. (rule) 908.01(4)(a)1, Stats., as having accomplished the logical extension noted in *Gelhaar v. State.* The rule declares that a prior inconsistent statement is not hearsay and contains no restriction against the use of such a statement for substantive purposes. Section (rule) 908.01(4)(a)1 applies generally to proceedings in both civil and criminal actions by the express provision of sec. (rule) 911.01(2), Stats. While the commentaries of the Wisconsin Judicial Council Committee to the *Wisconsin Rules of Evidence* have not been adopted by the Supreme Court, they are printed for information purposes, *In the Matter of the Promulgation of Rules of Evidence for the State of Wisconsin,* 59 Wis. 2d R1, R2 (1973), and show that the intent of the committee in drawing the rule adopted by the Wisconsin Supreme Court was to allow the use of prior inconsistent statements by one's own witness as substantive evidence in criminal proceedings:

Prior inconsistent statements by a witness who is a party or agent have always been "admissions" and sub-

stantive evidence. Impeaching evidence was not substantive in Wisconsin until *Gelhaar v. State, supra.*

In addition, *Gelhaar* was limited to the impeachment of an opposing party's witness and that limitation would be eliminated by this rule and s. 906.07. 59 Wis.2d at R234.

The continued need for that part of sec. 972.09, Stats., permitting a party to impeach his hostile witness through prior inconsistent statements is not apparent in view of sec. (rule) 906.07, Stats., which allows a party to attack the credibility of his witness. However, its continued existence is not inconsistent with sec. (rule) 908.01(4) (a)1, Stats.

We conclude that a prior inconsistent statement by a witness at a criminal trial is admissible under sec. (rule) 908.01(4) (a)1, Stats., as substantive evidence.

## II

## USE OF "UNSWORN TESTIMONY" AND DUE PROCESS

Defendant argues that the use of an unsworn (and by implication, out-of-court) prior inconsistent statement as substantive evidence of guilt deprives him of a fair trial and due process of law, relying on *Bridges v. Wixson,* 326 U.S. 135, 153 (1945) ; *United States v. Shoupe,* 548 F.2d 636, 643 (6th Cir. 1977) ; and *United States v. Morlang,* 531 F.2d 183, 190 (4th Cir. 1975).

*Bridges v. Wixson* held it was error to admit such statements as substantive evidence in a deportation proceeding. Justice Douglas said, "So to hold would allow men to be convicted on unsworn testimony of witnesses

—a practice which runs counter to the notions of fairness on which our legal system is founded." He relied upon a statement by Dean Wigmore in his 3d Edition of Evidence (1940), sec. 1018(b), "It is universally maintained by the Courts that Prior Self-Contradictions are not treated as having any *substantive or independent testimonial value.*" 326 U.S. 153, 154, footnote 9.

In *United States v. Morlang,* 531 F.2d at 190, the court said,

[I]t may be that in certain instances impeachment might somehow enhance the truth-finding process. Yet, whatever validity this latter assertion may have, it must be balanced against the notions of fairness upon which our system is based. Foremost among these concepts is the principle that men should not be allowed to be convicted on the basis of unsworn testimony, citing *Bridges v. Wixson.*

In *United States v. Shoupe,* 548 F.2d at 643, the court said,

We hold that the recitation by the prosecutor of the entire substance of a witness's disavowed, unsworn prior statements, which, if credited by the jury, would be sufficient to sustain a conviction, abridged defendant's right to a fair trial in violation of the Due Process Clause of the 5th Amendment, relying in part on *United States v. Morlang.*

No reason is advanced by defendant or the cases on which he relies for the proposition that the use of unsworn prior statements deprives a defendant of due process in a criminal trial, other than that such statements have no substantive value.

It is no longer "universally maintained" that prior unsworn inconsistent statements have no substantive value. *Gelhaar v. State,* 41 Wis.2d 230, 163 N.W.2d 609 (1969) and sec. (rule) 908.01(4)(a)1, Stats., are to the contrary. Proposed rule 801(d)(1)(A) of the Federal

Rules of Evidence as drafted by the Federal Advisory Committee to the United States Supreme Court (but subsequently modified by Congress) was almost identical to sec. (rule) 908.01(4)(a)1, Stats., and would have allowed such unsworn statements as substantive evidence. The Federal Advisory Committee's comments are reported at 59 Wis.2d R236:

So far as concerns the oath, its mere presence has never been regarded as sufficient to remove a statement from the hearsay category, and it receives much less emphasis than cross-examination as a truth-compelling device. While strong expressions are found to the effect that no conviction can be had or important right taken away on the basis of statements not made under fear of prosecution for perjury, *Bridges v. Wixson,* 326 U.S. 135, 65 S. Ct. 1443, 89 L. Ed. 2103 (1945), the fact is that, of the many common law exceptions to the hearsay rule, only that for reported testimony has required the statement to have been made under oath. 59 Wis.2d at R237.

The possible substantive value of an unsworn inconsistent statement made in a nonjudicial setting was recognized in *Chambers v. Mississippi,* 410 U.S. 284 (1973). *Chambers v. Mississippi* holds that unsworn inconsistent statements made by a witness under circumstances that provided considerable assurance of their reliability, largely because each statement "was in a very real sense self-incriminatory and unquestionably against interest," bore persuasive assurances of trustworthiness. 410 U.S. at 300–302. The court held that the exclusion of that prior statement denied defendant "a trial in accord with traditional and fundamental standards of due process." (302)

In *Chambers v. Mississippi* the defendant sought to use unsworn prior statements of a witness. In the instant case, the prosecution seeks to use the prior unsworn statement. This distinction is not significant. The substantive use of the statement in *Chambers* was held to be

appropriate not on the basis of the status of the party seeking its use, but rather on the basis of the statement's reliability. *Accord, Gelhaar v. State,* 41 Wis.2d at 237–240. It is the lack of trustworthiness which accounts for the broad statement in *Bridges v. Wixson* which would not permit its use.

Justice Cardozo said of due process considerations in evidentiary matters in *Snyder v. Massachusetts,* 291 U.S. 97, 122 (1934),

Privileges so fundamental as to be inherent in every concept of a fair trial that could be acceptable to the thought of reasonable men will be kept inviolate and inviolable, however crushing may be the pressure of incriminating proof. But justice, though due to the accused, is due to the accuser also. The concept of fairness must not be strained till it is narrowed to a filament. We are to keep the balance true.

We conclude that the use of an unsworn prior inconsistent statement of a witness as substantive evidence does not deprive a criminal defendant of due process.

### III

### RIGHT OF CONFRONTATION

Defendant argues that he was denied his right under the sixth amendment to the United States Constitution "to be confronted with the witnesses against him" because Lindsey disavowed recollection of the statement he gave to the police[3] and was therefore "unavailable" for meaningful cross-examination. The right of confronta-

---

[3] Compliance with a rule of evidence does not automatically demonstrate constitutional compliance. *California v. Green,* 399 U.S. 149, 155, 156 (1970).

tion is made obligatory on the states by the fourteenth amendment. *Dutton v. Evans,* 400 U.S. 74, 79 (1970).

In *State v. Lenarchick,* 74 Wis.2d 425, 247 N.W.2d 80 (1976), a witness called by the state had previously given a statement to the police to the effect that the defendant had admitted to her that he committed the murder with which he was charged. She claimed at the trial that she did not recall (1) hearing the defendant make such an admission or (2) making a statement to the police relating the defendant's admission. She did testify to facts described as being "at the very least" consistent with the defendant's guilt. The trial court allowed the prosecution to introduce her prior statement. The defendant argued on appeal that the introduction of the statement denied him his right to confrontation because the witness' lack of recall left him with "nothing to refute by cross-examination or impeachment." *Lenarchick,* 74 Wis.2d at 431. It was argued the right to cross-examine a forgetful witness was tantamount to no cross-examination at all.

The supreme court addressed separately the issues of availability for cross-examination for purposes of sec. (rule) 908.01(4)(a), Stats., and availability with respect to the requirements of the sixth amendment. The court held that the witness was available for cross-examination for purposes of sec. (rule) 908.01, Stats., and that the defendant was not denied his right to confrontation of which the opportunity to conduct a meaningful cross-examination is an integral part.

The constitutional right to confrontation and the concomitant opportunity for cross-examination were held not denied where the witness was on the stand and testified to other facts surrounding the incident in question. The court noted that defense counsel did not attempt to qualify or attack those portions of the witness' testimony which were "consistent with guilt" but took care to cross-examine only as to those matters on which the witness

claimed lack of memory. As for the matters on which the witness claimed lack of memory, the court concluded that there was no denial of confrontation and stated:

[I]t is apparent that the purported lapse of memory was selective and was favorable to the defendant. It is obvious, therefore, that prudent counsel would not cross-examine Miles in an effort to show that she had in fact heard Lenarchick's statement and she had in fact recounted it to the police. But it is another thing to then allege that counsel was denied the opportunity to cross-examine. He had that opportunity, but, as a matter of trial strategy and prudence, failed to do so. But the mere fact that possible cross-examination may reveal facts adverse to a client ought not implicate the confrontation clause. The claim of constitutional error is wholly specious. 74 Wis.2d at 444

The analysis of *Lenarchick* is applicable and controlling in the instant case. Lindsey was available and on the witness stand. His testimony from the stand, exculpatory of the defendant, was reasonably complete and detailed. As a matter of trial technique, defense counsel chose not to cross-examine the witness as to this testimony.

It was primarily post-robbery events in the police station which he could not remember, and even here his memory lapse was not absolute but was apparently, as in *Lenarchick,* somewhat selective. He remembered being taken to the station, that there were "five, six officers running in and out asking me questions" and that he signed a piece of paper, but denied recollection of making the statement.

Defendant's attorney had an opportunity to cross-examine Lindsey regarding his prior statement but limited his inquiries to four questions aimed particularly at determining how much the witness had drunk the evening of the robbery. Lindsey responded fully to each question.

[W]here complete failure of recollection is claimed the truth of the earlier statement is not tested by cross-examination with regard to its substantive content, but *California v. Green,* 399 U.S. at 168, 90 S. Ct. at 1940, indicates that we should reverse only if we conclude that "apparent lapse of memory so affected. . . [the] right to cross-examine as to make a critical difference in the application of the Confrontation Clause. . . ." *Lenarchick,* 74 Wis.2d at 443–444, quoting from *United States v. Payne,* 492 F.2d 449, 454 (1974).

■

Lindsey's lapse of memory was incomplete and did not so affect the opportunity to cross-examine as to make a "critical difference" in the application of the confrontation clause.

■

The fact that the jury might accept the truth of Lindsey's prior statement over that made on the stand does not place the defendant at an impermissible disadvantage. For, "[i]f, from all that the jury see of the witness, they conclude that what he says now is not the truth, but what he said before, they are none the less deciding from what they see and hear of that person and in court." *Lenarchick,* 74 Wis.2d at 443, quoting from *United States v. Payne,* 492 F.2d 449, 454 (1974), quoting *DiCarlo v. United States,* 6 F.2d 364, 368 (2d Cir. 1925).

## IV

## REFERENCE TO "RUNNING WITH A PARTNER IN PAST BURGLARIES"

A police witness testified, in a completely unresponsive answer, "Well, I had known that David had been running with a partner in past burglaries."

The trial court immediately sustained an objection by defendant's attorney and said, "The jury will disregard the question and answer and draw no inference therefrom."

Defendant contends that the officer's remark was too prejudicial for the court's instruction to remove the taint from the trial.

In *Moore v. State,* 83 Wis.2d 285, 265 N.W.2d 540 (1978), the trial court improperly permitted a witness to testify that he and defendant had escaped from the Wisconsin State Reformatory in 1969 and stolen a car. The supreme court held on appeal,

> Under sec. 817.37, Stats., a judgment will not be reversed or a new trial granted unless it appears that the error has affected the substantial rights of the party seeking relief. The effect of erroneously admitted evidence must be realistically evaluated in the context of the case, and a new trial will not be granted unless the error was so prejudicial that a different result might not have been reached if the evidence had not been admitted. (296, footnote omitted)

The court found that the substantial rights of the defendant had not been affected by the improper cross-examination. We reach the same conclusion after examining this record. The question is whether,

> [T]here is sufficient evidence, other than and uninfluenced by the inadmissible evidence, which would convict the defendant beyond a reasonable doubt. This test is based on reasonable probabilities. . . . A possibility test is the next thing to automatic reversal. In determining guilt "beyond a reasonable doubt," the human mind should not work on possibilities, but on reasonable probabilities. *Wold v. State,* 57 Wis.2d 344, 356, 357, 204 N.W.2d 482 (1973), citations and footnotes omitted.

The proximity of defendant in his automobile to the time and place of the robbery and the statement given

by Lindsey to the police were sufficient, other than and uninfluenced by the inadmissible evidence, to convict defendant beyond a reasonable doubt.

## V

## CONVICTION FOR BEING PARTY TO CONCEALING IDENTITY

Defendant argues that he cannot, as a matter of law, be a party under sec. 939.05, Stats., to the crime of concealing identity under sec. 946.62, Stats. He points to a statement in *State v. Nutley*, 24 Wis.2d 527, 554, 129 N.W.2d 155 (1964): "Under the terms of sec. 939.05(2)(b) and (c), Stats., a person may be vicariously liable for a substantive crime directly executed by another." He looks to *Karakutza v. State*, 163 Wis. 293, 298, 156 N.W. 965 (1916), for a definition of a substantive crime: "(T)he words 'substantive felony' simply mean a felony not dependent on the conviction of another person for another crime." Using that definition, defendant concludes that the concealing identity statute, sec. 946.62, Stats., does not describe a substantive crime because concealing identity cannot stand alone but "requires conviction of a separate substantive offense before it may be applied." Defendant concludes that concealing identity is simply a "penalty enhancer."

Defendant attaches too much significance to the term "substantive crime." It is not used in the criminal code. "Substantive felony" was used in sec. 4614, Stats., 1915, which was construed in *Karakutza*. That statute provided that any person who procured the commission of a felony could be convicted

[a]s an accessory before the fact, either with the principal felon, or after the conviction of the principal felon, or . . . of a substantive felony, whether the principal

felon shall or shall not have been convicted, or shall or shall not be amenable to justice. . .

*Karakutza* held it was error to instruct a jury in a murder trial as to the accessory statute because under that statute an accessory must be prosecuted as such. We are unable to find a connection between "substantive felony" as construed in Karakutza and "substantive crime" in *Nutley*. The court in *Nutley* appears to have used "substantive crime" to distinguish the acts of aiding and abetting and conspiring from the crime which is the object of those acts. "Substantive crime" is repetitively so used in *Pinkerton v. United States*, 328 U.S. 640 (1946), a conspiracy case cited in *Nutley*, 24 Wis.2d at 556, footnote 18. *Pinkerton* shows that the term is not controlling as to whether an act is a separate crime, for there the supreme court said,

It has been long and consistently recognized by the Court that the commission of the substantive offense and a conspiracy to commit it are separate and distinct offenses. The power of Congress to separate the two and to affix to each a different penalty is well established. A conviction for the conspiracy may be had even though the substantive offense was completed. 328 U.S. at 643, citations omitted.

Defendant cites *State v. Haldane*, 85 Wis.2d 182, 270 N.W.2d 75 (1978), as indicating that concealing identity under sec. 946.62, Stats., is an aggravation of the underlying crime and not a crime in itself. The court said in *Haldane*,

The court made it very clear in its instructions that in order to find the defendant guilty of armed robbery while identity was concealed, the jury must first find the defendant guilty of armed robbery. It stands in the same relation to robbery as the difference between armed robbery and robbery. Armed robbery is an aggravated form of robbery; armed robbery while identity is con-

cealed is an aggravated form of armed robbery. The legislature could have provided extra punishment for each and every crime in the statutes by adding a concealment of identity subsection to every section of the criminal code. However, the legislature followed the very logical path of making concealment an aggravation of any crime by enacting sec. 946.62. There is no offense to the double jeopardy clause of the constitution in either the statutory structure or the manner in which it was applied in this case. 85 Wis.2d at 197.

The quotation from *Haldane* must be understood in context. The issue before the court was whether the penalty imposed by sec. 946.62, Stats., the concealment statute, constitutes double punishment for the underlying crime, in violation of the double jeopardy clause of the constitution. The court held that the additional penalty for concealment imposed by sec. 946.62, Stats., constitutes no more a double punishment for armed robbery than does the greater penalty imposed for armed robbery as compared to robbery. Punishment under sec. 946.62, Stats., for concealment while committing the underlying crime is expressly "in addition to the maximum punishment fixed for such crime. . ." and is not pursuant to the underlying crime itself.

Section 946.62, Stats., prohibits concealing identity while committing a crime and punishes such conduct by imprisonment. It meets the statutory definition of a crime. Section 939.12, Stats., provides, "A crime is conduct which is prohibited by state law and punishable by fine or imprisonment or both." We conclude that concealing identity while committing a crime is a separate crime to which a person may be a party under sec. 939.05, Stats.

*By the Court.*—Judgment and order affirmed.