Opinion
AGLIANO, P. J.
“Every witness before testifying shall take an oath or make an affirmation or declaration in the form provided by law.” (Evid. Code, § 710.) The trial court in this case placed substantial reliance for its decision on the testimony of a four-year-old witness who neither took an oath nor made any commitment to relate the truth prior to testifying. We are compelled, accordingly, to reverse.
The juvenile court in this child dependency hearing, held pursuant to Welfare and Institutions Code section 300, subdivision (a), declared Heather H., a 14-year-old minor, a dependent child of the court. The order was based on findings that Heather had no parent or guardian exercising proper and effective parental care in that Heather’s father had sexually abused Heather’s four-year-old brother.

Statement of Facts

In the fall of 1985, Heather’s parents, Daniel and Marsha H., were involved in a dissolution proceeding involving custody of their two children and division of community property. In October 1985 the family court made a temporary order that Heather reside with her father and that her brother reside with her mother.
After Daniel made certain statements to his mother on November 26, 1986, Mrs. H. contacted her attorney. He in turn retained Anna Kuhl, a forensic psychologist, to examine Daniel and determine whether he had been molested by his father. Dr. Kuhl met with Mrs. H. and Daniel on November 29. She subsequently met with Daniel alone several times. On December 21, 1985, she talked with him “about good touches and bad touches.” In response, he told her “Dad touches my pee-pee at night.” He said it happened “when I sleep with him” and that he would pretend he was asleep. He stated that it felt good but that he did not like it. She testified *94 that, in her opinion, Daniel had been molested by his father. Dr. Kuhl reported the suspected molestation to the police on December 27.
Lieutenant Kevin Austin also interviewed Daniel. Daniel “pointed in the general direction of his groin area and said something like, ‘Daddy touches me down there’ or ‘Daddy rubs me down there.’ ” Lt. Austin also interviewed Heather who stated she had not been molested by her father. The police determined there was insufficient evidence for criminal prosecution, but referred the case to the Child Abuse and Neglect Center.
The court appointed Virginia Heenan, a clinical psychologist, to evaluate Daniel. She testified that in her opinion Daniel had been molested by his father. She found no indication that Mrs. H. had manipulated Daniel to make the accusation against his father. Dr. Heenan also testified that Heather’s relationship with her father was psychologically damaging.
Mr. H. testified that he never molested either Heather or Daniel. Heather testified that she wanted to live with her father. She was angry with her mother for charging her father with sexual molestation of the children and believed her mother bribed Daniel to make the accusations of molestation. She denied that her father had ever touched her in a sexual manner. She also maintained that Daniel was happy when he was with their father and she had never seen him act fearful toward him.

Discussion

The minor contends the court improperly conducted an in camera “interview” with Daniel. She challenges, inter alia, the fact that Daniel did not take the oath required by law of every witness before testifying.
At the jurisdictional hearing counsel stipulated that the court could “interview” Daniel in chambers with only a court reporter and Dr. Heenan present. This procedure is authorized by Welfare and Institutions Code section 350.[1] In chambers the court began by talking to Daniel about his *95 toys. It then asked about his father’s house and where he slept there. When the court asked whether anything happens when he sleeps with his father and Daniel replied, “no,” the court requested that Dr. Heenan and Daniel talk. Dr. Heenan and Daniel discussed his toys and then she asked if he would like to visit his father. When he said, “no,” she tried to determine why. Finally, Daniel said, “[b]ecause my Dad does bad things to me over there. . . . He touches me at night. . . and when I’m asleep he does that, and wakes me up and I pretend I’m asleep.” After several questions, he indicated his father touched him on the arm. He later indicated his father touched him on his foot and that he felt bad talking about it.
After Daniel left chambers, the court put its observations on the record: “He seemed to me to be for the most part quite agitated, on the verge of tears. His lips were trembling and shaking, and particularly when he was describing that his father rubbed his arm at night.” Heenan also stated her observations for the record: “That’s correct. I observed him to respond very well to the questions that were put by the judge. He responded with some animation and comfort I thought in the beginning, [fl] I observed his affect to change when the topic of his father was introduced. He immediately began to become tense and to want to avoid the questions, I thought.” The court agreed: “I couldn’t agree with that more. The subject of the father is one that is very, very troubling to this little boy. . . . [ft] And I frankly didn’t see any signs that he was giving back information that he had been told to by another person.”
Evidence Code section 710 provides that “[e]very witness before testifying shall take an oath or make an affirmation or declaration in the form provided by law.”[2] “ ‘Evidence’ means testimony, writings, material objects, or other things presented to the senses that are offered to prove the existence or nonexistence of a fact.” (Evid. Code, § 140.) In the absence of a waiver, such as a failure to object or a stipulation, unsworn testimony does not constitute “evidence” within the meaning of the Evidence Code. (People v. Lee (1985) 164 Cal.App.3d 830, 841 [210 Cal.Rptr. 799].)
*96 “The object of requiring an oath is, first, to affect the conscience of the witness and thus compel him to speak the truth, and also to lay him open to punishment for perjury in case he wilfully falsifies. . . . Even a child witness must be sworn, unless it is otherwise provided by statute, or the objection is waived.” (81 Am.Jur.2d, Witnesses, § 413, pp. 420-421; italics added; fns. omitted.) “No constitutional provision is violated when unsworn testimony is received. When, however, there is no waiver and an unsworn witness is permitted to give material testimony a ground for new trial exists.” (Id., §414, p. 421.)
California courts have required that a child witness be sworn prior to giving any testimony. In People v. Portlock (1931) 118 Cal.App. 566 [5 P.2d 920], the court found reversible error where the form of the oath administered to a five-year-old child did not substantially comply with the statutory requirements. The oath administered in that case was held insufficient because the trial court left out the words “[y]ou do solemnly swear” or “you do affirm.” (Id., at pp. 567-568.)
However, where the adequacy of the oathtaking is not raised at trial, the issue is deemed waived on appeal. (People v. Berry (1968) 260 Cal.App.2d 649 [67 Cal.Rptr. 312]; Trigueiro v. Skow (1937) 24 Cal.App.2d 253 [74 P.2d 836].) Since counsel, at the trial court’s suggestion, were not present at the in camera hearing, there can be no waiver imputed to the minor, Heather, of the requirement that a witness be sworn before questions are answered, Since the oath was not waived, Daniel’s unsworn testimony was not legally admissible.
Respondent suggested, at oral argument of this matter, that examination of the child in chambers was not for the purpose of taking his testimony but merely to observe him and to determine his state of mind. Nothing in the record, however, indicates that the purpose of the proceeding in chambers was so limited. We are simply unable to determine that the statutory requirement was not applicable in this case.

The Effect of the Error

Under Welfare and Institutions Code sections 355 and 701, it is the duty of the reviewing court to determine whether there is sufficient legally admissible evidence to sustain the court’s findings. (In re Cheryl H. (1984) 153 Cal.App.3d 1098, 1108-1109 [200 Cal.Rptr. 789].)
When each expert testified that in her opinion Daniel had been molested by his father, the court stated that it was receiving the testimony for the limited purpose described in Cheryl H. In In re Cheryl H., supra, 153 *97 Cal.App.3d 1098, the juvenile court declared the minor a dependent child of the court based on a finding that the minor had been sexually molested by her father. At the dependency hearing a psychiatrist testified that in her opinion the father had sexually molested the minor. Relying on cases which allowed expert opinion that certain injuries were the product of “battered child syndrome,” the Cheryl H. court held that expert opinion that the minor had been sexually molested was admissible. However, opinion identifying the molestor was not admissible. (Id., at p. 1118.)
In the instant case, the court expressly relied upon Daniel’s statements at the in camera hearing as well as the testimony of Dr. Kuhl and Dr. Heenan to sustain the petition. “Little Daniel said that he was molested by his father, said it to Anna Kuhl, his mother, Virginia Heenan, and I believe, in fact, said it to me.” Thus, despite its previous ruling, the court erroneously relied upon the experts’ testimony to support its finding that Mr. H. had molested Daniel. Since the court based its decision on evidence which was legally inadmissible and there was no other substantial evidence to sustain the court’s findings, we reverse.
The order is reversed.
Brauer, J., and Capaccioli, J., concurred.

Welfare and Institutions Code section 350 provides in part: “(a) The judge of the juvenile court shall control all proceedings during the hearings with a view to the expeditious and effective ascertainment of the jurisdictional facts and the ascertainment of all information relative to the present condition and future welfare of the person upon whose behalf the petition is brought. Except where there is a contested issue of fact or law, the proceedings shall be conducted in an informal nonadversary atmosphere with a view to obtaining the maximum cooperation of the minor upon whose behalf the petition is brought and all persons interested in his or her welfare with such provisions as the court may make for the disposition and care of the minor. [j|] (b) The testimony of a minor may be taken in chambers and outside the presence of the minor’s parent or parents, if the minor’s parent or parents are represented by counsel, the counsel is present and any of the following circumstances exist: []]] (1) The court *95 determines that testimony in chambers is necessary to ensure truthful testimony, [fl] (2) The minor is likely to be intimidated by a formal courtroom setting. []|] (3) The minor is afraid to testify in front of his or her parent or parents. [][] After testimony in chambers, the parent or parents of the minor may elect to have the court reporter read back the testimony or have the testimony summarized by counsel for the parent or parents. [][] The testimony of a minor also may be taken in chambers and outside the presence of the guardian or guardians of a minor under the circumstances specified in this subdivision.”

 Code of Civil Procedure section 2094 provides: “An oath, or affirmation, in an action or proceeding, may be administered as follows, the person who swears, or affirms, expressing his assent when addressed in the following form: ‘You do solemnly swear (or affirm, as the case may be), that the evidence you shall give in this issue (or matter), pending between _and_, shall be the truth, the whole truth, and nothing but the truth, so help you God.’ ”