FRION, Appellant, vs. CRAIG and another, Respondents.

*January 7—February 5, 1957.*

For the appellant there was a brief and oral argument by *Frank L. Morrow* of Eau Claire.

For the respondents there was a brief by *Stafford, Pfiffner & Stafford* of Chippewa Falls, and oral argument by *Robert F. Pfiffner.*

CURRIE, J.   On this appeal the plaintiff Frion seeks a new trial on the following grounds:

(1) The jury's verdict was the result of passion and prejudice as evidenced by the fact that the jury fixed the amount of plaintiff's damages for his personal injury at an alleged inadequate figure.

(2) The alleged misconduct of a juror.

(3) The alleged misconduct of defendant's counsel.

(4) The participation of the trial court in the questioning of witnesses to an extent that is alleged to have indicated partiality.

In view of the nature of the above assignments of error the facts surrounding the occurrence of the accident are of no significance.   The most hotly contested point in the trial was whether Frion was crossing the street at a point other than within the limits of the sidewalk lines extended into the intersection.   There was a sharp conflict of the testimony on this point.   The jury, acting under proper instructions from the trial court, resolved this issue against Frion by finding him causally negligent as to failure to yield the right of way.

In answering the questions of the verdict with respect to Frion's damages, the jury awarded $6,000 for loss of earn-

ings and $2,000 for personal injury. In addition the court answered the questions in the verdict as to the amount of Frion's medical and hospital expense, finding the same to be $2,690.70. Plaintiff's counsel attacks the $2,000 figure awarded for personal injury, contending that such finding indicates passion and prejudice on the part of the jury.

At the time of the accident Frion was an able-bodied man sixty-eight years of age who had been employed by the paper company at Cornell for the preceding thirty-six years. The nature of his injury sustained as a result of the accident was a broken left leg. There was a compound, comminuted fracture of the tibia, and a simple fracture of the fibula. He remained in the hospital for five months and when released from there he first walked with crutches and later with a cane. Later he was returned to the hospital for physiotherapy treatments during the period of May 31, 1955, to July 14, 1955. A good union with proper alignment has been obtained of the fractured bones. He had not returned to work at the time of trial, which was held approximately a year after the accident. The attending physician testified that Frion would probably be able to return to work within the year ensuing the date of trial, while another doctor expressed a doubt that Frion would ever be able to resume work. The medical testimony was in sharp dispute as to the amount of shortening of the injured leg. One doctor stated it amounted to but one quarter of an inch, while another testified there was an "apparent" shortening of two inches. There was also medical testimony that Frion was suffering from arteriosclerosis (hardening of the arteries) which had impaired blood circulation at the ankle, and that it was this rather than the fracture which was disabling Frion at the time of trial.

While $2,000 seems a low amount to award for Frion's personal injury we cannot hold that it is so extreme as to indicate passion and prejudice on the part of the jury. No

attack is made on the $6,000 found as damages for loss of earnings, and we deem this latter finding to be material on the issue of passion and prejudice.

The trial consumed three days. On the second day plaintiff's counsel reported to the court that Mrs. Solberg, one of the jurors, had held a private conversation with defendant Craig. In the absence of the jury, the trial judge called Craig to the stand and he was questioned by both opposing counsel and also by the court. Such questioning developed the following facts: About 1:30 p. m. of the previous day Craig had been seated in the county courtroom of the courthouse and Mrs. Solberg came in and spoke to him. She stated that she had visited at the home of one Delmar Sloop the evening before and Mr. Sloop has asked her to say "Hello" to Craig. Nothing was said in this brief conversation between Mrs. Solberg and Craig about the accident or the case being tried.

At the conclusion of questioning of Craig, plaintiff's counsel moved "that the juror, Mrs. Solberg, be excused and that we proceed with 11 jurors." This motion was denied and the trial proceeded.

A motion to withdraw a juror was a device resorted to in order to obtain a continuance for cause after the jury had been impaneled and the trial was in progress. *Planer v. Smith* (1876), 40 Wis. 31; Anno. 48 L. R. A. 432; and 53 Am. Jur., Trial, p. 679, sec. 966. It is seldom if ever resorted to nowadays in the practice. When such a motion is granted, a mistrial automatically results from the withdrawal of the juror, thus ending the trial. It is clear from the wording of the motion of plaintiff's counsel in the instant case that this was not the relief sought because of the express request that the trial proceed with 11 jurors. Counsel's motion should have requested a declaration of a mistrial, if counsel deemed that the interests of his client

had been prejudiced by the alleged misconduct of the juror Solberg. Counsel must have known that the trial court possessed no power to excuse a juror at this stage of the trial and proceed with 11 jurors in the absence of any stipulation to such effect from opposing counsel.

When counsel's improper motion was denied, counsel interposed no further motion. Such course of action is open to the obvious interpretation that he preferred to continue with the trial and take his chances with the outcome rather than move for a mistrial which would have ended the trial and made it necessary to retry the case at a later time. We consider that counsel thereby waived the issue of possible misconduct of a juror, which waiver precludes him from raising the issue on this appeal.

After the return of the verdict plaintiff's counsel obtained and filed affidavits from three jurors which stated that Mrs. Solberg, during the deliberations of the jury, took a stand indicating prejudice in favor of the defendant Craig and against the plaintiff. The general rule is that jurors will not be permitted to impeach their own verdict by affidavits. *State v. Biller* (1952), 262 Wis. 472, 55 N. W. (2d) 414, and cases cited therein. We deem that such rule is applicable in a situation of this kind. The inference which plaintiff's counsel seeks to draw from these affidavits is that these jurors were influenced in their deliberations by arguments advanced by Mrs. Solberg, thus impeaching their own verdict.

Plaintiff did properly raise the issue of alleged misconduct of defendants' counsel by motion after verdict. Two instances of such misconduct set forth in plaintiff's brief warrant our consideration.

Plaintiff's counsel called the defendant Craig as an adverse witness and in the course of the questioning referred to two blackboard diagrams of the intersection where the accident took place. During this part of the questioning de-

fendants' counsel interjected the remark, "Well, don't try to confuse him, Mr. Morrow." Any objection to a question, or to conduct of opposing counsel, should always be addressed to the court and not to counsel. Therefore, the remark complained of was improper from this standpoint. The intersecting streets were Bridge and Fifth streets and the apparent purpose of the question directed by plaintiff's attorney to the witness, which precipitated the remark by defendants' counsel, was to get the witness to state that Fifth street was not shown in the diagrams. There was, therefore, a legitimate basis for defendants' counsel thinking that an attempt was being made to confuse the witness.

The second incident of alleged misconduct presents a more-serious issue. One Haller had given the plaintiff Frion a ride in the former's pickup truck from the paper mill to the intersection of Bridge and Fifth streets, and had let Frion out of the vehicle in the south limits of the intersection. Haller then started up his truck and proceeded eastward on Bridge street and had proceeded only a short distance when he passed the defendant Craig's car coming from the opposite direction. Plaintiff called Haller as a witness but Haller was asked no question in direct examination as to the speed of the Craig automobile. On cross-examination defendants' counsel asked Haller, "Now the speed of the Craig car, can you tell us what that was?" Then the following took place:

"Mr. Morrow: Just a minute. Just a minute. We object on the ground that it's improper cross-examination. We asked him nothing about speed.

"Mr. Pfiffner: Well, do you want to hide it?

"Mr. Morrow: No, you can ask him, yourself, on direct examination.

"The Court: Very well. Objection sustained. You are getting into argument again, gentlemen. We'll confine the cross-examination to the direct examination."

Later defendants' counsel called Haller as defendants' witness and asked him how fast the Craig car was going as Haller had observed it approaching for a distance of a block and a half. Haller answered, "I would say around 20 or 25." No witness placed the speed of Craig's car at more than 25 miles per hour.

The conduct of defendants' counsel in accusing plaintiff's attorney of seeking to hide evidence from the jury, because of interposing an entirely proper objection to a question propounded to the witness, is subject to censure, and it should not be countenanced in a trial court. For this reason it is unfortunate that the learned trial court did not at the time of the occurrence rebuke counsel and instruct the jury to disregard the improper remark, explaining to the jury the right and duty of a lawyer to object to improper questions asked of a witness, and that no adverse inference should be drawn from the interposing of a proper objection, such as the one made here.

This court should not direct a new trial for improper statements made by defendants' counsel unless we are convinced that prejudice to the plaintiff resulted which influenced the jury's verdict. We are not so convinced.

We express no opinion as to the correctness of the trial court's ruling that the propounded question by defendants' counsel, as to the speed of the Haller car, constituted improper cross-examination.

We come now to the last contention advanced in behalf of plaintiff, *i. e.,* that the trial judge's questioning of witnesses and comments during the trial evinced partiality toward the defendants. Plaintiff failed to raise this issue in his motions after verdict and therefore is precluded from doing so on this appeal. *Wells v. Dairyland Mut. Ins. Co.,* ante, p. 505, 80 N. W. (2d) 380. However, an examination of the record in this case discloses that the trial judge's questions

directed to witnesses were only for the purpose of clarification and evince no indication of partiality whatsoever. We also can perceive nothing objectionable in the trial judge's comments as quoted in plaintiff's brief.

*By the Court.*—Judgment affirmed.