PIORKOWSKI (Geraldine), and others by Guardian *ad litem*, Respondents, v. LIBERTY MUTUAL INSURANCE COMPANY and another, Appellants.

*No. 332. Submitted under sec. (Rule) 251.54 April 10, 1975.—*
*Decided May 6, 1975.*
(Also reported in 228 N. W. 2d 695.)

For the appellants the cause was submitted on the brief of *Otjen, Phillip & McFadyen* of Milwaukee.

For the respondents the cause was submitted on the brief of *Jeffrey S. Schuster* and *Hersh & Stupar, S. C.,* all of Milwaukee.

ROBERT W. HANSEN, J.    Three claims of trial court error are made on appeal and each will be dealt with individually and in turn.

*Denial of nonsuit.*

At the close of plaintiffs' case-in-chief, defendants' motion for nonsuit was denied.   At the end of the taking

of testimony, the motion for nonsuit was renewed and again denied, as was defendants' motion for directed verdict.

The denial of defendants' motion for nonsuit at the close of plaintiffs' case-in-chief was error. Plaintiffs were required to link causally the dynamiting operation nearby with their well becoming unusable. This they sought to do by coupling a description of the specific blasting operation conducted by defendant with the well becoming inoperative. The civil engineer for the county sewerage commission testified that in one shaft the defendant contractor detonated approximately 28 blasts per day, using an average of 75 pounds of dynamite per blast, and that in the other shaft the defendant detonated 15 blasts during the month involved, using approximately 120 pounds of dynamite per blast. An employee of defendant contractor explained that there were milliseconds of "delay" between detonations, testifying that approximately 45 pounds of dynamite were used in a pattern and ". . . roughly from 10 to 12 pounds per delay."

To link blasting and well damage, three hypothetical questions were put to the university professor, an expert on civil engineering, who testified for the plaintiff. None related to a situation where 10 to 12 pounds of dynamite were used per delay. The first and third questions assumed a situation where 45 pounds of dynamite were used per delay. The second hypothetical question asked assumed a situation where 75 pounds of dynamite were used per delay. On cross-examination the professor reaffirmed that his affirmative answers as to causation on the hypothetical questions asked were based on assumptions of 45 pounds and 75 pounds of dynamite being used per delay. He further testified that 16 pounds of dynamite per delay would be safe at a distance of 200 feet, the distance between well and blasting here involved.

Plaintiffs' counsel suggests three ways in which the evident gap between the fact situation as to dynamite per delay and the facts assumed in the hypotheticals can be bridged: (1) That a reasonable inference can be drawn from the deposition testimony of an employee of defendant contractor to find that 45 pounds of dynamite were in fact used per delay in the tunnel blasting. But that employee testified that 45 pounds of dynamite were used "for the whole job," meaning "one complete round" or "one complete shot." No basis exists for inferring he meant 45 pounds per delay. (2) That defendant contractor's superintendent confirmed in his testimony that the civil engineer stated that 75 pounds of dynamite per delay were used. One witness' misstatement that another witness testified to a certain fact does not establish such fact nor change the testimony as given by such other witness. (3) That the defendant contractor's superintendent could not or would not give an answer when asked why the blasting was performed 200 feet from plaintiffs' well while the magazine for storage of explosives must be kept at least 500 feet away from the blasting. Such question was several times asked with the superintendent stating that he did not understand the question. Failure to answer a question does not here establish a basis for inferring that the blasting was conducted too close to the well—much less does it establish that either 45 pounds or 75 pounds of dynamite were here used per delay.

With the gap between the facts and the assumptions in the three hypothetical questions left unbridged at the close of plaintiffs' case, it follows that, at the close of plaintiffs' case-in-chief, there was insufficient credible evidence and no inferences which might reasonably be drawn therefrom to support plaintiffs' claim to cause of action. (*See: Liebmann v. Busalacchi* (1971), 52 Wis. 2d 692, 695, 191 N. W. 2d 31. *See also: Trogun v. Frucht-*

*man* (1973), 58 Wis. 2d 569, 585, 207 N. W. 2d 297.) Defendants' motion for nonsuit should have been granted. However, every trial court error is not reversible error. Sec. 274.37, Stats., provides: "No judgment shall be reversed or set aside or new trial granted in any action or proceeding, civil or criminal . . . as to any matter of pleading or procedure, unless in the opinion of the court to which the application is made, after an examination of the entire action or proceeding, it shall appear that the error complained of has affected the substantial rights of the party seeking to reverse or set aside the judgment, or to secure the new trial." Applying this statute as to reversibility of error, the motion for nonsuit at the end of plaintiffs' case-in-chief stands in no different position than the same motion renewed at the end of the taking of testimony, for it is to the entire record that we are to direct our attention upon review.

In the record before us it is clear that, when called as a rebuttal witness, the professor who had answered the three hypothetical questions did two things: (1) He clarified or explained his earlier use of the word "delay" by testifying that ". . . four individual shots, what was called by the other witness as delays are not—cannot be considered as delays but one delay only, I mean four shots at—present one delay only, which means that the poundage, the total amount of explosive that results in the vibration effect is much higher than the figure given for one delay," and (2) he testified, on redirect examination, as follows:

"*Q.* Professor, if there was a twelve pound delay at a distance of two hundred feet with a time interval between delays of one millisecond, what, if any, damage would be done to the well?
"*A.* Most probably, serious damage."

Our examination of the entire record leads to the conclusion that this is the only testimony, given late in the

trial, that links the established use of 12 pounds of dynamite in a series of blasts, two hundred feet away, with damage to plaintiffs' well. However, it was here sufficient to take the case to the jury and to warrant the jury finding that the dynamiting, 200 feet away, using 10 to 12 pounds of dynamite per delay, did damage plaintiffs' well. It follows that it was not error for the trial court to deny defendants' motions for nonsuit and directed verdict at the end of the taking of testimony, and under sec. 274.37, Stats., not reversible error to have denied defendants' motion for nonsuit made at the end of plaintiffs' case-in-chief.

*Basis for hypothetical questions.*

Defendants' second claim of error is that the trial court permitted the professor to answer the three hypothetical questions, assuming the use of either 45 pounds or 75 pounds of dynamite per delay in the blasting, when there were no facts in evidence that either 45 pounds or 75 pounds of dynamite per delay had been used. In this state a trial court ". . . must be in a position to insist upon a proper foundation being laid before it allows the [hypothetical] question to be answered." (*Kreyer v. Farmers' Co-operative Lumber Co.* (1962), 18 Wis. 2d 67, 81, 117 N. W. 2d 646.) However, the eliciting of an opinion from an expert witness no longer need be by way of the hypothetical question approach. Counsel may use a hypothetical question, but is not forced to do so, although the trial court may in its discretion ". . . insist that a hypothesis be used." (*Rabata v. Dohner* (1969), 45 Wis. 2d 111, 134, 172 N. W. 2d 409.) Where the hypothetical question is used, the trial court is to separate premises from conclusions but is to " '. . . wait till the end of the trial and all the evidence on both sides is in, before it determines what premises are proved and therefore which opinions have a factual basis.' " (*Id.* at page

126, quoting 2 Wigmore, *Evidence* (3d ed.), p. 795, sec. 673.)

In the case before us, even by this end-of-trial testing, the assumption in the three hypothetical questions that either 45 pounds or 75 pounds of dynamite per delay were used in the blasting remained without support in the record. Defendants' objections to the three hypothetical questions asked should have been sustained and the answers stricken, not necessarily at the time of the questions being asked (*see: id.* at page 128), but at the end of the taking of testimony. The three answers given to the three questions asked are completely immaterial to the causation question of whether blasts 200 feet away, using 10 to 12 pounds of dynamite per delay, caused the damage to the well. However, the case was entitled to go to the jury, not on the answers to the hypotheticals, but on the single opinion question asked and answered by the professor during rebuttal testimony. Under sec. 274.37, Stats., the issue for us to resolve is one of reversibility, not admissibility. On this record, we do not find that the error complained of and here found, affected the substantial rights of the party seeking to reverse or set aside the judgment. In reaching this conclusion we give weight to the fact that the objections to the three questions, made and overruled at the time the questions were asked, were not renewed or motion to strike made at the conclusion of taking of testimony, the time, under the *Rabata* holding (*id.* at page 128) when the support in the record for assumptions made in the hypothetical questions is to be tested and determined. It is recommended that trial courts, given a "lack of foundation" objection to a hypothetical question, reserve final ruling until all testimony is taken, but, on the facts here, we find the error not to be reversible error under sec. 274.37.

Defendants also contend that it was error for the trial court to refuse to strike the rebuttal testimony of the

professor. Earlier in the trial, the court sustained an objection to questions asked by defense counsel on cross-examination using the terms "partial blasts" and "misfire" on the basis that there was no evidence that there had been a misfire. The ruling on the admissibility of the rebuttal testimony is distinguishable in that the professor's statements concerned two or more delays going off at one time, was given in relation to the time interval between delays and was based on testimony that two delays could go off simultaneously and that this could have occurred in this situation. Thus the rebuttal testimony did not relate to a misfire and had a sufficient basis in the record.

*Elements of damage.*

No issue is raised on this appeal as to the property damages awarded plaintiff Geraldine Piorkowski for the costs of replacing well, water pump and certain other items of personal property. (The amount of such actual damages was set by the court at $1,179.) Rather the challenge is to the elements of personal damages awarded the three plaintiffs for "inconvenience, humiliation and emotional strain." As to the first element, that of actual inconvenience caused by the stoppage of the well, it is an appropriate and proper element of damages. Long ago, in a case involving the stoppage of gas service to a hardware store, our court held that: ". . . The 'inconvenience and annoyance' occasioned directly by the wrongful act or refusal of the defendant, are always legitimate items in estimating the damages in actions of this kind." (*Shepard v. Milwaukee Gas Light Co.* (1862), 15 Wis. 349 (*318), 358 (*326).) For the actual physical inconvenience of having to go without water or go elsewhere to secure water for personal use and hygiene, damages were here awardable to the householder and the members of her family. Whenever there is construction work or even highway repairs, there is often some measure of

resultant inconvenience or annoyance which property owners in the neighborhood are obliged to tolerate. (*See: D'Albora v. Tulane University* (La. App. 1973), 274 So. 2d 825.) However, the cutting off of the well water supply to a household for approximately six months is a step above the natural concomitants of building construction and similar activities, and we hold, on the facts here, that the plaintiffs were entitled to recover damages for the actual physical inconvenience suffered.

As to the recoverability of damages for emotional strain, not manifested by or causative of any physical injury, the allowance of damages for such claim of mental anguish or emotional distress encounters the majority holding in the *Ver Hagen Case.* (*Ver Hagen v. Gibbons* (1970), 47 Wis. 2d 220, 177 N. W. 2d 83.) There the plaintiff sought to recover damages for mental anxiety and emotional distress occasioned by his having to flee from the scene of a fire. There, by a four-to-three majority, our court held that ". . . psychological or emotional damage caused by negligence is, in limited circumstances, compensable" (*id.* at page 225) but that, in negligence cases, the ". . . emotional stress must be manifested by physical injuries . . . ." (*Id.* at page 227.) Any cause of action for negligent infliction of emotional strain without any accompanying physical injury was then, there and thus rejected. The only claim of accompanying physical injury in the case before us is the allegation in the complaint that one plaintiff, Shirley Piorkowski, suffered a skin condition as a result of not being able to bathe properly. No evidence to support such allegation was introduced at the time of trial, nor is there any allegation in the complaint or testimony in the record as to any other physical injury accompanying the claimed emotional strain. "Emotional strain" was here not a proper or recoverable element of damages.

As to the third element of personal damage here submitted to the jury, that of "humiliation," we find this to be in the same category as "emotional strain" and excluded as a proper element of damages by the same rule and for the same reasons given in *Ver Hagen*. Actually, this court has treated this element of feeling humiliated as included in a proper definition of mental or emotional suffering. In an assault and battery case, involving an intentional tort, not negligence, this court found compensation for mental suffering appropriate, and defined such suffering to include items ". . . such as humiliation, shame, embarrassment, and fear." (*Jones v. Fisher* (1969), 42 Wis. 2d 209, 215, 216, 166 N. W. 2d 175.) Whether "humiliation" is viewed as being similar to "emotional strain," or included in the definition of what constitutes "emotional strain," the result is the same: "Humiliation" was not here a recoverable element of damages.

Thus we conclude that the jury was entitled to award personal damages solely for actual physical inconveniences suffered, and not for either emotional strain or humiliation. With these three elements of personal damage commingled in the jury award of damages, reversal of the judgment based on the verdict is here required. The case is strong on this record for remand for retrial, in the interest of justice, on all issues. But with reversal required solely as to the award damages, retrial is directed solely on the issue of damages, but with a *Powers* option to the plaintiffs added. Under the *Powers* rule, this court can give a plaintiff an option to take a reduced amount found to be reasonable or a new trial on damages. (*See: Powers v. Allstate Ins. Co.* (1960), 10 Wis. 2d 78, 102 N. W. 2d 393.) The sound public purpose served is to avoid new trials—if the plaintiff is willing to accept the lesser amount found by this court to be reasonable. (*Jones v. Fisher, supra,* at page 215.) While customarily

used where jury verdicts are found to be excessive in the amount awarded, the *Powers* option is also available where, as here, the inclusion of improper elements of damage has rendered a jury verdict both reversible as error of law as to its basis and excessive. We determine that a reasonable amount of personal damages, based solely on the element of physical inconveniences sustained, would in this case be as follows: To plaintiff Geraldine Piorkowski—$1,500; to plaintiff Shirley Piorkowski—$800; and to plaintiff Victor Piorkowski—$300. The plaintiffs are accorded the option of accepting judgment for such sums, together with the judgment for property damages awarded Geraldine Piorkowski in the amount of $1,179, plus taxable costs, or of having a new trial confined to the issue of damages.

Our application of the *Powers* rule requires that the judgment be reversed and cause remanded to the trial court with the direction that the plaintiffs have the option to elect to take judgment in the amounts fixed by this court in this opinion, plus taxable costs. Such election shall be made in writing within twenty days after the return of the record to the trial court. In the event the plaintiffs refuse or neglect to make such election within the twenty days, the trial court shall enter an order for a new trial on the issue of damages as to any of the three plaintiffs so refusing or neglecting to exercise such option.

*By the Court.*—Judgment reversed, and cause remanded with directions for further proceedings consistent with this opinion. No costs are awarded either party on this appeal.