NOVITZKE, Plaintiff in error, v. STATE, Defendant in error.

Supreme Court

*No. 77–183–CR. Submitted on briefs October 10, 1979.—*
*Decided November 6, 1979.*
(Also reported in 284 N.W.2d 904.)

For the plaintiff in error the cause was submitted on the brief of *Howard B. Eisenberg,* state public defender, and *Mark Lukoff,* first assistant state public defender.

For the defendant in error the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *John M. Schmolesky,* assistant attorney general.

WILLIAM G. CALLOW, J.   Rick B. Novitzke (defendant) was found guilty of the offense of homicide by intoxicated use of a motor vehicle, contrary to sec. 940.09, Stats.   Writs of error were issued to review the judgment of conviction and the order denying the defendant's post-conviction motion for a new trial.   The errors alleged involve a hypothetical question put to an expert witness and the admissibility of evidence concerning the defendant's hospitalization for treatment of alcoholism.

On September 8, 1975, at about 12:30 p.m., the defendant went to the Ranch House Tavern in Milwaukee where he drank two beers, two double shots of anisette, and a tequila sunrise over a two and one-half hour period.   At about 3 p.m., the defendant left the tavern for a forty-five minute period to show his new car to a friend.   The bartender who served the defendant testified that, when the defendant returned to the tavern, he appeared to be under the influence "of something," "glassy eyed," and "a lot looser."   The defendant admitted on cross-examination that he had taken barbituates about an hour or hour and a half after his last drink.   The bartender testified the

defendant sat on the floor of the bar for several minutes. The defendant testified he had dropped some antihistamines on the floor and was pushed to the floor as he bent to retrieve them. He stayed there to pick up the pills.

At about 4 p.m., the defendant left the tavern with a friend, and after several stops drove his friend home. The accident occurred at approximately 5:25 p.m., after the defendant had left his friend. The defendant testified that just prior to the accident he saw a gold car make a quick left turn as it approached from the south on an intersecting street into his lane of traffic. This car cut in front of a brown Buick which was immediately ahead of the defendant's car. The defendant noticed that the Buick's brake lights were on; he braced himself, turned the steering wheel to the left, and struck the Buick.

Eyewitnesses testified they saw a white car rapidly approach the Buick from the rear, start to pass the Buick, and strike the Buick in the left rear, sending it airborne until it struck a telephone pole, snapping the pole in half. The driver of the Buick exhibited no life signs at the scene of the accident, and he was pronounced dead on arrival at St. Michael's Hospital.

After impact the white car traveled in the air into a parking lot, striking another car. Both eyewitnesses identified the defendant as the driver of the white car.

Police officer Malejk testified he saw the defendant staggering at the accident scene. A record check on the defendant revealed that a parking warrant had been issued for his arrest, and the defendant was taken into custody. Police officer Schmidt testified that he observed a strong odor of alcohol on the defendant's breath and that the defendant was drunk.

The defendant was taken to the 4th District Station where he refused a breathalyzer test. At about midnight the defendant was placed in the city jail. About 1 a.m., the defendant was advised of his constitutional rights and

gave a statement. After giving the statement, the defendant gave a urine sample. The parties stipulated the police maintained an unbroken chain of custody of the sample. At no time while in police custody did the defendant have access to alcohol. A chemist for the Milwaukee Health Department testified that the sample of urine had an alcohol content of .142 percent by weight, equivalent to a blood alcohol content of .107 percent by weight. The defendant gave detectives a statement in which he admitted committing himself in May, 1974, to the DePaul Rehabilitation Center for drug and alcohol addiction. After a hearing on admissibility, the court found the statement admissible. At trial the statement was read by the detective who took it.

Did the trial court commit reversible error in allowing an improper hypothetical question concerning the defendant's blood alcohol level to be answered?

At trial Dr. Chesley Erwin, Milwaukee County Medical Examiner, was called by the state as an expert witness. During direct examination the Assistant District Attorney put to Dr. Erwin the following hypothetical question:

"Okay. Doctor, if the defendant in this action were taken into custody at approximately 5:30 P.M. and then remained in continuous custody for approximately eight and one half hours, not having any access to alcohol, and if after eight hours he submitted to an analysis of his urine which had a result of .142 alcohol in the urine, what, if anything, to a reasonable degree of scientific certainty could you say about the amount of alcohol that would have been in the defendant's urine at 5:30 P.M.?"

Over the defendant's objection, Dr. Erwin was allowed to answer:

"Under those stated conditions I would conclude and it would be my opinion that the blood value would have been higher at an earlier time."

Dr. Erwin's testimony satisfied the requirements of sec. 885.235(3), Stats.,[1] for the admission of the results of a test measuring the alcohol content of a sample of the defendant's urine. The defendant contends allowing Dr. Erwin to answer the hypothetical question was error because evidence that the defendant gave a urine sample and evidence that the sample had an alcohol content of .142 percent by weight had not been admitted when the question was asked. The defendant relies on *Zebrowski v. State,* 50 Wis.2d 715, 727, 185 N.W.2d 545 (1971), where the court quoted from 2 Wharton's, Anderson, *Criminal Evidence,* (12th ed.) 351, sec. 523: "A hypothetical question put to an expert on direct examination must be based on facts in evidence, or conform to tendencies of the evidence. An expert cannot be asked as to a hypothesis having no foundation in the evidence in the case." We note that this language is qualified by the same authority as follows: "The defect of basing a hypothetical question in part upon matters not in evidence may sometimes be remedied by the admission thereafter of evidence relating to such matters." 2 Wharton's, Anderson, *Criminal Evidence,* (12th ed.) 1972 Cumulative Supplement, 352, sec. 523. *Accord:* 2 Wigmore, *Evidence,* (3d ed.) 795, sec. 673; McCormick, *Evidence,* (2d ed.) 33, sec. 14; Annot. 56 A.L.R.3d 300, sec. 6(c).

*Piorkowski v. Liberty Mutual Insurance Company,* 68 Wis.2d 455, 228 N.W.2d 695 (1975), affirms that the defendant's reliance on *Zebrowski v. State, supra,* is misplaced. In *Piorkowski* the trial court permitted an expert witness to answer three questions put to the

[1] Sec. 885.235(3), Stats., provides: "If the sample of breath, blood or urine was not taken within 2 hours after the event to be proved, evidence of the amount of alcohol in the person's blood as shown by the chemical analysis is admissible only if expert testimony establishes its probative value and may be given prima facie effect only if such effect is established by expert testimony."

witness on direct examination, even though all the facts on which the questions were based were not yet in evidence. Reaffirming the principle established in *Rabata v. Dohner*, 45 Wis.2d 111, 172 N.W.2d 409 (1969), this court held that support in the record for assumptions made in a hypothetical question is to be tested and determined at the conclusion of testimony. *Piorkowski v. Liberty Mutual Insurance Company, supra* at 462. Although *Piorkowski* was a civil action, sec. 972.11(1), Stats., makes the rule applicable to criminal proceedings.

We conclude the record establishes that every assumption on which the hypothetical question in issue was based was supported by facts in evidence at the conclusion of testimony. Accordingly, we find the trial court did not err in allowing Dr. Erwin to answer the question.

Did the trial court commit reversible error in admitting evidence of the defendant's hospitalization for alcoholism eighteen months prior to the offense for which defendant was convicted?

The defendant contends that the admission into evidence of a statement made by the defendant to the police that he had voluntarily committed himself to an alcoholic and drug rehabilitation center eighteen months before the accident was error because the testimony was irrelevant. We agree. Sec. (Rule) 904.01, Stats., provides:

"**Definition of 'relevant evidence.'** 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

Evidence that the defendant was hospitalized for alcohol and drug addiction eighteen months prior to the accident does not make existence of the fact of intoxication at the time of the accident any more or less probable. Ac-

cordingly, the trial court erred in admitting, over the defendant's objection, that portion of the defendant's statement.

Although we recognize the admission of the defendant's statement regarding prior hospitalization for alcoholism was error, we find it to be harmless error. "Errors committed at trial should not overturn the conviction unless it appears the result might probably have been more favorable to the party complaining had the error not occurred." *Hart v. State*, 75 Wis.2d 371, 394, 249 N.W.2d 810 (1977). In *Wold v. State*, 57 Wis.2d 344, 356, 204 N.W.2d 482 (1973), a case involving improperly admitted evidence, the court stated:

"The test of harmless error is not whether some harm has resulted, but, rather, whether the appellate court in its independent determination can conclude there is sufficient evidence, other than and uninfluenced by the inadmissible evidence, which would convict the defendant beyond a reasonable doubt. *See Harrington v. California* (1969), 395 U.S. 250, 89 Sup. Ct. 1726, 23 L. Ed.2d 284. This test is based on reasonable probabilities."

Other formulations of the harmless error test would require reviewing courts to set aside the verdict and judgment unless sure that the error did not influence the jury, or had but only slight effect. *Kelly v. State*, 75 Wis.2d 303, 317 n. 3, 249 N.W.2d 800 (1977) and concurring opinion at 321. The evidence here supports the conclusion that under any test the error committed at defendant's trial was harmless. Evidence of the defendant's intoxication includes: (1) The testimony of five Milwaukee police officers that defendant was intoxicated at the scene of the accident or while in police custody. (2) The testimony of Sharon Schimke that defendant's speech was slurred, that he continually dialed wrong numbers, and that he was staggering when he

made phone calls from her home shortly after the accident; and her testimony that he was intoxicated. (3) The testimony of the bartender who served the defendant. (4) The testimony of Dr. Grins, analytical chemist for the Milwaukee Health Department, that the sample of urine given by the defendant approximately eight and one-half hours after the accident had an alcohol content of .142 percent by weight, equivalent to a blood alcohol content of .107[2] percent by weight. (5) Dr. Erwin's testimony that it "would have been higher at an earlier time."

*By the Court.*—Judgment and order affirmed.

---

[2] Sec. 885.235(1)(c) and (2), Stats., provide:

"(c) The fact that the analysis shows that there was 0.1% or more by weight of alcohol in the person's blood is prima facie evidence that he was under the influence of an intoxicant, but shall not, without corroborating physical evidence thereof, be sufficient upon which to find the person guilty of being under the influence of intoxicants.

"(2) The concentration of alcohol in the blood shall be taken prima facie to be three-fourths of the concentration of alcohol in the urine."