Raymond D. POHL, Plaintiff in error-Petitioner,

v.

STATE of Wisconsin, Defendant in error.

Supreme Court

*No. 78–034–CR. Argued April 2, 1980.—Decided May 6, 1980.*

(Also reported in 291 N.W.2d 554.)

For the plaintiff in error-petitioner the cause was argued by *Ronald L. Brandt,* deputy state public defender, with whom on the briefs were *Howard B. Eisenberg,* former state public defender, and *Richard L. Cates,* state public defender.

For the defendant in error the cause was argued by *Mary V. Bowman,* assistant attorney general, with whom

on the briefs was *Bronson C. La Follette,* attorney general.

COFFEY, J. This is a review of a decision denying the defendant's, Raymond Pohl, motion for post conviction relief. The defendant and a co-defendant, Steven Rische, were arrested for the burglaries of two residences in the city of Milwaukee on July 26, 1974. They were each charged with two counts of burglary, party to the crime, contrary to secs. 943.10 and 939.32, Stats. Pohl and the co-defendant Rische were tried jointly[1] before a jury.

Prior to trial, the defendant, Pohl, filed a motion for severance, pursuant to sec. 971.12(3), Stats.,[2] on the ground that the co-defendant, Rische, had made an extrajudicial confession to the police admitting his participation and implicating him (Pohl) in the burglaries. The state disclosed that the co-defendant, Rische, had actually made two statements to the police:

1. a hand written confession in which Rische admitted only his involvement in the burglaries; and

2. an oral confession in which Rische implicated the defendant and two other accomplices.[3]

---

[1] The defendant and co-defendant were each represented by a different defense counsel.

[2] Sec. 971.12(3), Stats., reads as follows:

"**Joinder of crimes and of defendants. . . .**

"(2) . . .

"(3) RELIEF FROM PREJUDICIAL JOINDER. If it appears that a defendant or the state is prejudiced by a joinder of crimes or of defendants in a complaint, information or indictment or by such joinder for trial together, the court may order separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires. The district attorney shall advise the court prior to trial if he intends to use the statement of a co-defendant which implicates another defendant in the crime charged. Thereupon, the judge shall grant a severance as to any such defendant.

[3] The two other accomplices were Arthur Gaines and Larry Stelloh who were the state's primary witnesses against the defendant.

The state also informed the court that it intended to use these statements at trial. The court, rather than granting the severance motion, elected instead to excise that portion of Rische's oral statement implicating the defendant, Pohl, and directed the state to instruct the police officer "not to name any of the persons that were with . . . Rische at the time of the burglary on direct examination" as recited in the oral confession. After excising the statement implicating Pohl, the court denied the defendant's motion for severance. At that time, the state also expressed its intent to use the statement implicating Pohl in the burglaries if Rische took the stand in his own defense and thus be subject to cross-examination:

"If Mr. Rische testifies, of course, there is no longer a Bruten [sic] problem. At that time, I will be asking him about the confession."[4]

At trial, the state's evidence against the defendant, Pohl, and the co-defendant, Rische, consisted primarily of the testimony of Arthur Gaines and Larry Stelloh, co-participants in the burglaries.[5] Gaines and Stelloh, awaiting sentencing on separate robbery charges, agreed to testify against Pohl and Rische in exchange for the state's agreement not to charge them as co-conspirators in these two burglaries. They testified that the four of them met at Stelloh's house on the morning of July 26, 1974, the date of the burglaries. Later that morning, they stated that they drove around in the defendant's car looking for an unoccupied house to burglarize. At ap-

---

[4] The term *Bruton* problem refers to the United States Supreme Court decision in *Bruton v. United States*, 391 U.S. 123 (1968) where the court proscribed the use of a co-defendant's confession, inculpating the defendant when there is no opportunity to cross-examine the co-defendant because he was unavailable to be cross-examined.

[5] Gaines and Stelloh had originally been arrested for robbery and while being questioned by police admitted their guilt and also implicated the defendant, Pohl, and a co-defendant, Rische, in the house burglaries of July 26, 1974.

proximately 1 p.m., some time after the mail delivery, they noticed mail still in the mailboxes of a duplex across from Mitchell Park. As the defendant, Pohl, stopped the car, Rische exited and walked up to the front door and rang the doorbell. When no one answered, Stelloh testified that Rische walked back to the mailboxes and obtained "the name of the people that lived in one of the houses off the mail that was there and we went to a phone booth and called the house first. There was no answer. Then we went back." When they returned to the duplex the defendant, Pohl, parked the car while Rische, Gaines and Stelloh proceeded to break front door windows in each of the apartments to gain entry. Upon entering the apartments, all four of them[6] proceeded to search and gather the valuable items from the apartments. The stolen property was loaded into the defendant's car. The defendant, Pohl, then drove Stelloh and Rische back to Stelloh's house. Gaines went with Pohl to his home where the defendant "gave me the money for the merchandise [$225 in cash to be split among them] that we had and then he brought me back by Larry's house."

In an attempt to discredit Gaines and Stelloh's testimony, the defendant, Pohl, sought to establish that their testimony was biased and that they were angry and trying to get back at him. Pohl claimed that Stelloh was co-operating with the police and testifying for the prosecution in hopes of receiving a lighter sentence for the robbery for which he had been convicted, but had not yet been sentenced. Pohl contended the uncharged co-conspirator, Gaines, was angry at him because:

(1) the defendant refused to give Gaines title to the car in which he was interested, but rather gave it to Gaines' former girl friend;[7] and

---

[6] Stelloh stated that he saw Pohl in both apartments while Gaines testified that he only saw Pohl in one of the apartments.

[7] The defendant transferred the title in the car to Gaines' former girl friend because she had actually paid for the car, initially

(2) the defendant had threatened to have Gaines killed if he testified against him.

The state in its case in chief introduced the confessions of Gaines, Stelloh and Rische as evidence against the defendants. The confessions of Gaines and Stelloh were substantially consistent with their testimony at trial. Gaines and Stelloh, in their statements given immediately after their arrests, admitted their participation in the burglaries and also implicated the defendants, Pohl and Rische. Detective Dobesch testified that Rische, following his arrest, admitted his participation in the burglaries in oral and written confessions. The detective, pursuant to the court's direction, excluded from his testimony any reference to Pohl, Gaines and Stelloh. The statement that Rische made to the police was consistent with the testimony of the prosecution's other two witnesses, Gaines and Stelloh.

The defendant, Pohl, in support of his alibi defense, claimed that he was working on his girl friend's, Linda Thorson's, car at the time of the burglaries on July 26, 1974, and thus could not have taken part in the burglary. In addition, the defendant presented testimony from three other witnesses to support his claim that he was working on his girl friend's car at her house at the time of the burglaries. Susan Mahl testified that she saw the defendant, Pohl, off and on during the day of the burglaries while she was babysitting at Pohl's girl friend's house. On cross-examination she admitted to being the girl friend of the defendant's brother. Woodrow Lex, Pohl's brother-in-law, stated that he was with Pohl the day of the burglaries from 10 o'clock in the morning till approximately 6 p.m. and helped the defendant work on

loaning money to Gaines to make the original down payment on the car and later paying off the remainder of the money owed on the car.

the car. Lastly, Darric Monte, a friend of the defendant, stated that he helped Pohl work on the car between 1 and 3 o'clock in the afternoon.

During the cross-examination of the defendant's alibi witnesses, the state became aware of what was apparently described as a "transcript" of a conference between the defendant, his attorney and the alibi witnesses. The record is unclear as to whether the defense attorney took notes or had his secretary take notes of their conversations during the conference in his office. The defense counsel had the "transcript" of the conversations typed up for his use at trial. The prosecution moved, pursuant to sec. 971.24(1), Stats., to obtain a copy of the transcript. The defendant's attorney objected on the grounds that: (1) they were not complete transcripts, but merely notes of his conversations with the defendant and the alibi witnesses, and also (2) they were his attorney work product. The trial court ruled that the "transcript" represented statements of defense witnesses rather than attorney work product and thus the state was entitled to them, pursuant to sec. 971.24(1). Therefore, the court ordered the "transcript" turned over to the prosecution. The state thereafter had them available for use, if it saw fit to use them, in the cross-examination of Pohl and the alibi witnesses.

The co-defendant, Rische, also took the stand in his own defense claiming that he was with his girl friend, Toni Schroeder, on the day of the burglaries. He denied any recollection of making the oral and written confessions to the police. He stated that he could not even recall the circumstances surrounding his arrest or the police's interrogation of him because he had been drinking alcohol, taking drugs (codeine) and smoking marijuana prior to his arrest. On cross-examination, the prosecution questioned Rische about the names of the three other individuals who were implicated in his oral confession

(previously excised by the court). At that point, the court interrupted the state's cross-examination and held an *in camera* conference concerning the previously excised testimony. The state contended that the excised material was now admissible because the co-defendant, Rische, had taken the stand and was thus available for cross-examination about his statement to the police implicating Pohl. The court permitted the state to cross-examine Rische about that portion of the confession that had been earlier excised. At no time during this conference did the defendant's counsel raise an objection to the ruling, move for a mistrial, request that the trial court continue the excision of the reference in the confession implicating the defendant or renew his motion for severance of the trial. Moreover, Pohl's counsel neither objected nor consented to further cross-examination of the co-defendant, Rische, as to those portions of Rische's statements previously excised. Following the conference, the state continued its cross-examination of Rische concerning his confession naming Pohl, Gaines and Stelloh as participants in the burglaries. The state recalled Detective Dobesch who read the entire confession of Rische (including those portions originally excised) implicating the defendant, Pohl, in the burglaries. Pohl's counsel in turn briefly cross-examined Rische about the confession but decided, for strategy purposes, not to make any inquiry about his claimed loss of memory.

The jury found both the defendant, Pohl, and the co-defendant, Rische, each guilty of two counts of burglary. The court sentenced both defendants to two consecutive indeterminate terms of seven years or a total of 14 years each. The defendant, Pohl, moved for a new trial or in the alternative for a reduction or modification of sentence. The court denied the motions. Thereafter, the defendant filed a motion for post conviction relief, pursuant to sec. 974.06, Stats., on the following grounds:

1. that the trial court improperly denied his motion for severance;

2. that introduction of those portions of the co-defendant's confession inculpating him were a denial of his constitutional right of confrontation; and

3. that the trial court erred in ordering the defense counsel to turn over "notes" of a conference between the defendant, his attorney and his alibi witnesses.

The trial court, in an order entered April 14, 1978, denied the defendant's motion for post conviction relief and ruled as follows:

"(1) Defendant's contention that he was denied the opportunity to effectively cross-examine his co-defendant was satisfied by the co-defendant's presence on the witness stand and pursuant to *California v. Green*, 399 U.S. 149 (1970), effective cross-examination was offered defendant;

"(2) Defendant's motion for severance was properly denied pursuant to Sec. 971.23(3), Stats., and the Court properly exercised its discretion in that regard; and

"(3) The State was permitted to cross-examine defendant based upon the 'transcript' of the conference with defendant, his attorney and alibi witnesses pursuant to sec. 971.20(1), [sic] Stats., and that such transcript did not constitute defense counsel's 'work product'."

The court of appeals, in an unpublished decision, affirmed the trial court's order. It is from this decision that the defendant has petitioned the court for review.

*Issues*

1. Did the trial court and the court of appeals err in refusing to grant the defendant's motion for severance, pursuant to sec. 971.12(3), Stats.?

2. Was Pohl's constitutional right of confrontation violated by the court's ruling admitting those portions of Rische's confession implicating Pohl after the co-defendant (Rische) had claimed no recollection of the confession?

3. Did the trial court err in directing the defendant to turn over to the prosecution a transcript of the defense counsel's interview with the defendant and the alibi witnesses, pursuant to sec. 971.24(1), Stats.?

*Severance*

On appeal the defendant, Pohl, contends that the trial court and the court of appeals erred in denying the defendant's pretrial motion for severance based on the anticipated introduction of a statement by the co-defendant, Rische, implicating him in the burglaries, pursuant to sec. 971.12(3), Stats. The defendant contends that sec. 971.12(3), mandates severance:

"(3) RELIEF FROM PREJUDICIAL JOINDER. If it appears that a defendant or the state is prejudiced by a joinder of crimes or of defendants in a complaint, information or indictment or by such joinder for trial together, the court may order separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires. *The district attorney shall advise the court prior to trial if he intends to use the statement of a co-defendant which implicates another defendant in the crime charged. Thereupon, the judge shall grant a severance as to any such defendant.*" (Emphasis supplied.)

In this case, rather than granting severance as requested by the defendant, the trial court, in furtherance of proper court administration (speedy and single trials, wherever possible, thus without necessitating repeated witness appearances) ordered those portions of the co-defendant's, Rische, statement implicating the defendant, Pohl, in the burglaries be excised and deleted. In *Cranmore v. State,* 85 Wis.2d 722, 271 N.W.2d 402 (Ct. App. 1978) the court of appeals held that deletion of implicating references adverse to a defendant is an appropriate form of alternative relief to that of granting severance:

"Defendants have not argued in this court that the statutory language of this section requires severance of defendants in all instances in which law enforcement authorities possess a statement by a codefendant implicating another defendant. We do not believe such an argument would be viable. The legislative committee note indicates that the statute is intended to provide a mechanism to insure compliance with *Bruton*. As we have stated, compliance may be had with *Bruton* by *effectively* excising any reference implicating a codefendant and by instructing the jury as to the limited purpose for which the evidence is admitted. If this is done, the statement no longer 'implicates another defendant' and therefore does not fall within the prohibition of the statute. The legislative committee note also indicates that this statutory provision is taken from F.R. Cr. P. [Federal Rules of Criminal Procedure]. The procedure utilized in this trial is authorized by that statutory provision.

"The Judicial Council Committee's Note–1974 appended to sec. 901.06, Stats., which permits introduction of evidence which is admissible for only limited purposes or only as to one party, states: 'S. 971.12(3) provides for separate trials or severance *or other appropriate relief* if a confession implicates a codefendant.' (Emphasis supplied.) We believe that the 'other appropriate relief' referred to is the deletion of implicating references and that the procedure utilized at this trial was warranted under secs. 971.12(3) and 901.06, Stats." *Id.* at 747–48.

We agree with the court of appeals decision that deletion of "implicating references" is a permissible option to that of severance. Thus, as a result of the trial court's decision to delete any references in the co-defendant's, Rische, confession, implicating the defendant, it was not error for the trial court to deny the defendant's, Pohl, motion for severance. However, after the co-defendant, Rische, had taken the witness stand and was available for cross-examination, the trial court permitted the state to introduce the co-defendant's confession, including that portion implicating Pohl. At this point in the trial,

during the *in camera* conference, Pohl's counsel had several options open to him:

1. to object to the reference to the excised portions of the statements in cross-examination of Rische;
2. to move for a mistrial and severance of the trials; or
3. to make no objections, allow the cross-examination to continue and even cross-examine the co-defendant himself.

Facing a choice of options as to how to proceed, it was the responsibility of defense counsel to choose between such options by formal motion, not by silence and subsequent claim of error.

In *Kinks v. Combs*, 28 Wis.2d 65, 135 N.W.2d 789 (1964) this court held that a defendant who fails to make a motion for a mistrial at the time he is prejudiced by an opposing counsel's remarks, has in effect waived his right to claim prejudice at a later time:

"If the defendant had been prejudiced, the fact that the evidence was not probative of plaintiffs' counsel's remarks was known to him at the close of plaintiffs' case. By failing to move for a mistrial at that time defendant waived his right to assert prejudice later. Under analogous situations we have held that counsel claiming prejudice by reason of counsel's misconduct must promptly make proper objections to the court." *Id.* at 72.

Similarly, in *Lemberger v. Koehring Co.*, 63 Wis.2d 210, 225, 216 N.W.2d 542 (1974) this court held that:

"The [waiver] rule simply provides that, when there occurs in the course of trial a highly prejudicial event which is likely to materially affect the outcome of the trial, the party aggrieved must raise his objection then and move for mistrial. His failure to do so when he reasonably should have known of the prejudicial occurrence constitutes a waiver of the objection." *Id.* at 226.

This rule on waiver has been followed by the court in the following cases: *Whitby v. State,* 34 Wis.2d 278, 149 N.W.2d 557 (1967) ; *Leibl v. St. Mary's Hospital of Milwaukee,* 57 Wis.2d 227, 203 N.W.2d 715 (1973) ; *Valiga v. National Food Co.,* 58 Wis.2d 232, 206 N.W.2d 337 (1973) ; *Nimmer v. Purtell,* 69 Wis.2d 21, 230 N.W. 2d 258 (1975).

The theory behind the waiver argument as expressed in *Kinks v. Combs, supra,* was that the defendant's:

"Failure to make a timely motion can only be construed as an election to rely on the possibility of a favorable jury verdict. In *Frion v. Craig* (1957), 274 Wis. 550, 555, 80 N.W.2d 808, where the conduct of a juror was in question, we stated:

" 'Such course of action is open to the obvious interpretation that he preferred to continue with the trial and take his chances with the outcome rather than move for a mistrial . . . We consider that counsel thereby waived the issue of possible misconduct of a juror, which waiver precludes him from raising the issue on this appeal.' " *Id.* at 72–73.

In view of the fact that the defense counsel failed to object, move for a mistrial or renew his motion for severance at the time the state introduced the full text of the co-defendant's, Rische, confession, including those portions implicating the defendant, Pohl, he had in effect waived any right to assert prejudice on appeal. In this case, the trial counsel elected, as a matter of strategy, to continue with the trial and take his chances with the jury verdict. Therefore, we hold that the court of appeals was correct in affirming the trial court's order denying the defendant post-conviction relief.

*Confrontation*

Next, the defendant, Pohl, alleges that the introduction of his co-defendant's, Rische, oral confession (implicat-

ing him in the burglaries) into evidence violated his constitutional right to cross-examine the witness against him[8] on the grounds that since Rische denied any recollection of making the oral statement, he was prevented from exercising his right of cross-examination.

The United States Supreme Court in *California v. Green,* 399 U.S. 149, 90 S. Ct. 1930, 26 L. Ed.2d, 489 (1979) held that:

". . . there is good reason to conclude that the Confrontation Clause is not violated by admitting a declarant's out-of-court statements, as long as the declarant is testifying as a witness and subject to full and effective cross examination.

"This conclusion is supported by comparing the purposes of confrontation with the alleged dangers in admitting an out-of-court statement. Confrontation: (1) insures that the witness will give his statements under oath—thus impressing him with the seriousness of the matter and guarding against the lie by the possibility of a penalty for perjury; (2) forces the witness to submit to cross-examination, the 'greatest legal engine ever invented for the discovery of truth'; (3) permits the jury that is to decide the defendant's fate to observe the demeanor of the witness in making his statement, thus aiding the jury in assessing his credibility.

"It is, of course, true that the out-of-court statement may have been made under circumstances subject to none of these protections. But *if the declarant is present and testifying at trial, the out-of-court statement for all practical purposes regains most of the lost protections.* If the witness admits the prior statement is his, or *if there is other evidence to show the statement is his, the danger of faulty reproduction is negligible and the jury can be confident that it has before it two conflicting statements by the same witness.* Thus, as far as

---

[8] The Sixth Amendment of the United States Constitution provides that "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." Art. I, sec. 7 of the Wisconsin Constitution requires that a defendant have the right "to meet the witnesses face to face."

the oath is concerned, the witness must now affirm, deny, or qualify the truth of the prior statement under the penalty of perjury; . . .

"Second, the inability to cross-examine the witness at the time he made his prior statement cannot easily be shown to be of crucial significance as long as the defendant is assured of full and effective cross-examination at the time of trial." *Id.* at 158–59. (Emphasis supplied.)

The defendant cites *Virgil v. State,* 84 Wis.2d 166, 267 N.W.2d 852 (1978) in support of his claim that he was denied full and effective cross-examination because the co-defendant denies any recollection about making the prior statement. However, the facts in *Virgil v. State, supra,* are distinguishable. In *Virgil* a co-participant in a murder was "called to the stand to testify." He responded that he had pled guilty to murder and had been sentenced to 34 years in prison. He refused any further testimony and was found guilty of contempt for his refusal to answer further questions. Subsequently, a police detective was called to the stand and he recounted that the co-participant had made a prior oral statement and two prior written statements to him, all of them implicating the defendant in the crime. This court held that there was a violation of the defendant's Sixth Amendment right to confrontation in that case as "there was no opportunity for cross-examination." *Id.* at 189. Furthermore, the court distinguished the fact situation in that case from the situation of *Lenarchick:*

"In *Lenarchick* we held that there was no violation of the right of confrontation where the witness was physically available and did not object to cross-examination, but rather displayed a selective loss of memory and where the circumstances indicated that counsel carefully avoided cross-examination on issues that were potentially harmful to the defendant.

"The instant case is, however, quite different and falls within the teachings of *Douglas v. Alabama,* 380 U.S.

415 (1965). In that case the defendant's accomplice, who had been tried separately, was called as a witness but invoked his privilege against self-incrimination." *Id.* at 187.

Therefore, in view of the fact that in *Virgil v. State, supra,* the witness did not exhibit a selective loss of memory but rather completely refused to answer any questions on direct or cross-examination except to say that he had pled guilty to the crime and was sentenced, we hold that *Virgil v. State, supra,* is factually distinguishable from the present case. While this court has held that a defendant is entitled to a meaningful right of cross-examination,[9] we have refused to rule that a witness' claimed inability to recall making a statement is a denial of "full and effective" or "meaningful" cross-examination. In *State v. Lenarchick,* 74 Wis.2d 425, 247 N.W.2d 80 (1976), this court was faced with the situation where a witness on the stand at trial denied recollection of any out-of-court statements inculpating the defendant. The defendant, Lenarchick, claimed that as a result of the witness' "lack of memory," he was denied his right to confront the witness and thus sought to have the witness' testimony excluded. This court held that Lenarchick was not denied his right of cross-examination with respect to the matters the witness professed a lack of recall for the following reasons:

"In the instant case it is apparent that the purported lapse of memory was selective and was favorable to the defendant. It is obvious, therefore, that prudent counsel would not cross-examine Miles [the witness] in an effort to show that she had in fact heard Lenarchick's statement [the defendant] and she had in fact recounted it to the police. But it is another thing to then allege that counsel was denied the opportunity to cross-examine. He had that opportunity, but, as a matter of trial strategy

[9] *State v. Olson,* 75 Wis.2d 575, 250 N.W.2d 12 (1977); *Nabberfeld v. State,* 83 Wis.2d 515, 266 N.W.2d 292 (1978).

and prudence, failed to do so. But the mere fact that possible cross-examination may reveal facts adverse to a client ought not implicate the confrontation clause. The claim of constitutional error is wholly specious.

"A review of the record shows that counsel failed to cross-examine the witness Miles on matters that she did remember and wisely avoided pressing her in respect to her lack of recollection of the admission of his client. The claim of inability to cross-examine is without foundation. We conclude that the claim of constitutional error is unfounded." *Id.* at 443–44.

Recently, in *Vogel v. State,* 87 Wis.2d 541, 275 N.W.2d 180 (Ct. App. 1979), the court of appeals relied on *Lenarchick* to arrive at a similar conclusion. In that case, a co-participant in a robbery provided the police with a signed statement implicating the defendant in the crime. At trial, the co-participant admitted signing a confession at the police station after his arrest, but denied any recollection of giving a statement to the police, claiming he was too drunk at the time. The co-participant's in-court testimony was exculpatory of the defendant. On appeal, the defendant argued that because the witness denied any recollection of making a statement to the police, he was "unavailable" for meaningful cross-examination. *Id.* at 553. The court of appeals, in upholding the trial court's admission of the co-participant's written statement into evidence against the defendant stated:

"The analysis of *Lenarchick* is applicable and controlling in the instant case. Lindsey was available and on the witness stand. His testimony from the stand, exculpatory of the defendant, was reasonably complete and detailed. As a matter of trial technique, defense counsel chose not to cross-examine the witness as to this testimony.

"It was primarily post-robbery events in the police station which he could not remember, and even here his memory lapse was not absolute but was apparently, as in *Lenarchick,* somewhat selective. He remembered being

taken to the station, that there were 'five, six officers running in and out asking me questions' and that he signed a piece of paper, but denied recollection of making the statement.

"Defendant's attorney had an opportunity to cross-examine Lindsey regarding his prior statement but limited his inquiries to four questions aimed particularly at determining how much the witness had drunk the evening of the robbery. Lindsey responded fully to each question.

". . .

"Lindsey's lapse of memory was incomplete and did not so affect the opportunity to cross-examine as to make a 'critical difference' in the application of the confrontation clause." *Id.* at 555–56.

We find the *Lenarchick* case dispositive of the confrontation issue in this case also. Based on a complete reading of the record, we conclude that the co-defendant's, Rische, lapse of memory was an exercise of selective amnesia in this case as he could not remember making the statement but was able to recount all his other actions on the day of the burglaries, including the fact that he picked up his paycheck. He testified that he remembered being arrested on March 18, 1975, at approximately 8 or 9 p.m. and then "being forced into the kitchen, handcuffed, placed in a chair, but I don't remember leaving the house." Rische stated that he did not remember all the circumstances of the arrest because he had been drinking and taking drugs prior to his arrest. The next thing he remembered was being taken to the city jail and then later to court. Further evidence of his selective amnesia can also be found in the following testimony:

1. that he had taken codeine just prior to his arrest;

2. that he obtained the codeine from his girl friend who was taking it by prescription for pain; and

3. when shown a written confession he allegedly made to the police and asked: "Is that your handwriting?", he responded "I couldn't swear to that."

Rische's testimony on the stand was favorable to the defendant in that it affirmed his and Pohl's lack of participation in the burglaries and thus rebutted the testimony of Gaines and Stelloh, the state's other two witnesses. The defendant had the opportunity to cross-examine Rische about his alibi defense, or whether the defendant, Pohl, had participated in the burglaries but as a matter of trial strategy declined to cross-examine as to either matter. Pohl strategically avoided questioning the co-defendant, Rische, about his lack of memory as to Rische's prior statements implicating Pohl to the police as a matter of trial judgment. Obviously, it was not beneficial to repeat the lack of memory defense and thus highlight Rische's confessions implicating Pohl to the jury once again. Conversely, if Rische had affirmed making the statement, the defendant would have been placed in a more precarious position than when the co-defendant denied recollection of the statement. Similarly, if the co-defendant either confirmed making the statement but denied its truthfulness or denied making the statement altogether, Rische's credibility would have been destroyed and that would have further damaged the defendant's case. This, in turn, might have cast further doubt upon the defendant's case. There was little or no benefit to be gained by Pohl's attorney cross-examining his co-defendant, Rische, about the content of the statement. Therefore, it is evident that the defendant, as a matter of trial strategy, declined to thoroughly cross-examine the co-defendant, Rische, but tripped lightly through the field of cross-examination concerning his confession. Thus, we hold the defendant's claim that he was denied the right of effective confrontation and cross-examination is without merit.

*Transcript of Conference Between Defendant and Alibi Witnesses*

Lastly, the defendant contends that it was error for the trial court to order the defense to turn over copies of

"transcripts" of interviews between the defense attorney, the defendant and the alibi witnesses. The defendant alleges that the "transcripts" involved in this case were not covered by the requirements of sec. 971.24(1), Stats.[10]

The trial court found the "transcript" of the conference between the defendant and his alibi witnesses represented statements. The court of appeals held that this determination is "a finding of fact, resolving an issue as to fact presented to the trial court."

Sec. 971.24(1), Stats., refers to "written or phonographically recorded statements." The statements in this case consisted of either the defense attorney's notes or the shorthand notes of the defense counsel's secretary. We believe the attorney's and secretary's notes in this case are not included within the meaning and intent of this statute as to authenticity, accuracy and completeness and further they were not attested to by the secretary or the attorney. The purpose of the statute is to provide opposing counsel with prior statements of a witness in order to test whether the witness' testimony is consistent and accurate. The statute clearly was not intended to require the production of inaccurate and incomplete statements of a witness which would not advance or serve the fact finding process. The Comment of the Judicial Council, (1969), to sec. 971.24(1), states that this statute "is a restatement of the existing case law in *State v. Richards,* 21 Wis.2d 622, 124 N.W.2d 684 . . ." In *Richards* this court held that the right to inspect prior statements of a witness to the authorities:

---

[10] Sec. 971.24(1), Stats., reads as follows:

"971.24 **Statement of witnesses.** (1) At the trial before a witness other than the defendant testifies, written or phonographically recorded statements of the witness, if any, shall be given to the other party in the absence of the jury. For cause, the court may order the production of such statements prior to trial.

"(2) . . ."

". . . goes only to statements or portions thereof concerning the subject matter of the witness' testimony and *written or signed by the witness or given orally and stenographically or mechanically transcribed.*" (Emphasis supplied.) *State v. Richards,* 21 Wis.2d 622, 633, 124 N.W.2d 684 (1963).

While there is language in *State v. Richards, supra,* that oral statements stenographically transcribed may be required to be produced, it is this court's view that this language refers to oral statements that have been recorded verbatim. It is our belief that there must be some indicia of the reliability of the statement (including its accuracy, completeness and authenticity) as a requirement to ordering the production of the statement, pursuant to sec. 971.24(1), Stats. We hold that the court of appeals' affirmation of the trial court's finding of fact that the transcript constituted a written or recorded statement was, as a matter of law, in error.

In *Hart v. State,* 75 Wis.2d 371, 249 N.W.2d 810 (1977), this court held that:

"Errors committed at trial should not overturn the conviction unless it appears the result might probably have been more favorable to the party complaining had the error not occurred. *Woodhull v. State,* 43 Wis.2d 202, 168 N.W.2d 281 (1969)." *Id.* at 394. *See also: State v. Bowie,* 92 Wis.2d 192, 284 N.W.2d 613 (1979).

Moreover, in *Novitzke v. State,* 92 Wis.2d 302, 284 N.W.2d 904 (1979) this court set forth the test for harmless error as follows:

" 'Errors committed at trial should not overturn the conviction unless it appears the result might probably have been more favorable to the party complaining had the error not occurred.' *Hart v. State,* 75 Wis.2d 371, 249 N.W.2d 810 (1977). In *Wold v. State,* 57 Wis.2d 344, 356, 204 N.W.2d 482 (1973), a case involving improperly admitted evidence, the court stated:

" 'The test of harmless error is not whether some harm has resulted, but, rather, whether the appellate court in its independent determination can conclude there is sufficient evidence, other than and uninfluenced by the inadmissible evidence, which would convict the defendant beyond a reasonable doubt. See *Harrington v. California* (1969), 395 U.S. 250, 89 Sup. Ct. 1726, 23 L. Ed. 2d 284. This test is based on reasonable probabilities.'

"Other formulations of the harmless error test would require reviewing courts to set aside the verdict and judgment unless sure that error did not influence the jury or had but only slight effect. *Kelly v. State,* 75 Wis.2d 303, 317 n. 3, 249 N.W.2d 800 (1977) and concurring opinion at 321." *Id.* at 308.

In this case the trial court ordered that the "transcript" of the conference between the defendant (Pohl), his attorney and the alibi witnesses be turned over to the prosecution. The state used the statements to prepare for cross-examination of the alibi witnesses, but due to the fact that there were no material inconsistencies or variations between their testimony and statements, they were of no avail to the state for use as impeachment of the alibi witnesses. Thus, the statements were not even used by the prosecution for impeachment purposes in this case. Therefore, we find the use of the statements at trial was not prejudicial to Pohl. A thorough review of the record establishes that there existed an overwhelming quantum of evidence, as to the defendant's participation in the burglaries, to convict the defendant beyond a reasonable doubt. In addition, there is no evidence that the error influenced the jury. Therefore, we hold that the error in this case was harmless error, the defendant is not entitled to a new trial and the judgment of conviction on two counts of burglary is affirmed.

*By the Court.*—The decision of the court of appeals is affirmed.

SHIRLEY S. ABRAHAMSON, J. *(dissenting).* The last two sentences of sec. 971.12(3), Stats., provide as follows:

"The district attorney shall advise the court prior to trial if he intends to use the statement of a codefendant which implicates another defendant in the crime charged. Thereupon, the judge shall grant a severance as to any such defendant."

The last two sentences of sec. 971.12(3) are mandatory. The district attorney is required to advise the court prior to trial if he intends to use the statement of a codefendent which implicates another defendant in the crime charged. When advised by the district attorney, the judge is required to grant a severance as to any such defendant.

If before trial the trial court excises a portion of the codefendant's statement to remove the matter which implicates the defendant in order to avoid falling within the last two sentences of sec. 971.12(3), Stats., the trial court must continue with the excision if it is to continue with the trial.